INZER, Presiding Justice,
for the Court:
This is an appeal by Bush Construction Company, Inc. from a judgment of the Circuit Court of Smith County awarding appel-lee Billy Ralph Blakeney a judgment in the amount of $62,500 as damages for personal injuries resulting from a one car accident.
Blakeney brought this suit in the Circuit Court of Smith County charging that on November 7, 1974, Bush Construction Company was contractor for and was causing to be resurfaced State Highway No. 28 between Mize and Taylorsville. It was charged that this highway was open to general and unrestricted public travel. The highway was being resurfaced by layers of asphalt and at the point complained of the surface had been substantially raised but dirt had not been pulled up to the level of the road causing a dangerous and hazardous *1371 drop-off to those using the road. It was further charged that Bush failed to notify the traveling public of the dangerous condition in that it failed to put up necessary warning signs, blinking lights, smudge pots, barricades or other warning devices to warn those traveling the highway that the particular section of the highway was under construction and that a hazardous drop-off existed.
The declaration then charged that the plaintiff’s vehicle was traveling east on the highway about four miles east of Mize when he met a vehicle proceeding west. Both vehicles had their lights burning and when plaintiff moved his vehicle to the right side of the road, plaintiff’s tires, suddenly and without cause, caught the hazardous edge on the asphalt shoulder and the sudden catching caused plaintiff to lose control of his vehicle, run off the road, turn over and strike a light pole and a tree.
It was charged that Bush was guilty of negligence in (a) building up the asphalt level of the road without keeping the dirt shoulder pulled up to the asphalt level, (b) failing to warn those using the road by the use of available warning devices of the existence of the dangerous shoulder created by the edge of the asphalt, (c) failing to provide either a temporary or permanent center line or edge line along the side of said road, and (dl failing to use proper methods in performing the resurfacing work.
Bush answered and denied that it was guilty of any negligence that caused or contributed to the accident and alleged that the accident was due solely to the negligence of Blakeney.
The facts indicate that about 12:30 a. m. on November 7,1974, Blakeney was operating his vehicle in an easterly direction on Highway 28 which was being widened and resurfaced. The evidence established that Blakeney’s vehicle left the highway at a point where the highway makes a sweeping curve to the left. The vehicle left the pavement, crossed the shoulder, traveled 300 feet where it struck and knocked down a light pole, passed through a fence, glanced an oak tree and finally came to rest upside down on top of a second fence some 600 feet from the point it left the highway.
The principal conflict in the evidence in this case involves the question of whether there was a drop-off or low shoulder at the point where the vehicle left the highway. Five witnesses testified on behalf of Blake-ney that there was a vertical drop-off from the hard surface of the roadway to the shoulder. They estimated the drop-off to be from one foot to one and one-half feet. They all testified that there were no warning devices or signs in the area warning the person driving at night of the alleged dangerous drop-off.
One of the witnesses was Daniel Lowrey, a supervisor in a plant at Taylorsville. He was not acquainted with the plaintiff. Mr. Lowrey worked the night shift on November 7 and was on his way home from work going in a westerly direction on Highway 28. He was the first person to the scene after the accident. His testimony was that as he approached the scene, he saw slashes that appeared to be lightning, but found them to be electrical flashes from the electrical wires that were attached to the pole which was struck by plaintiff’s car. He first started looking for the car and found it with the plaintiff thrown outside the car. Plaintiff was unconscious. This witness examined the scene after plaintiff was carried away in an ambulance and testified he could see where plaintiff’s vehicle left the south side of the roadway and left “some skid marks” as the wheels got on the shoulder, which according to him was two or three feet wide at this point. He testified that the drop from the hard surface to the shoulder was probably twelve to fourteen inches at the point where the vehicle left the roadway. The witness did not see any warning signs at the point where the vehicle left the highway.
The testimony of these witnesses was contradicted by five witnesses who testified for Bush. Included in this group were three officers who investigated the accident and they failed to find any drop-off or noticeable low shoulder at the point where *1372 the vehicle left the highway. However, this conflict in the evidence must be resolved in favor of the plaintiff Blakeney and it must be conceded for the purpose of this opinion that there was a drop-off or low shoulder at this point.
Blakeney suffered severe head injuries as a result of the accident and the neurosurgeon testified that the principal damage to plaintiff’s head was in the brain area associated with memory. He also sustained a compression fracture of the sixth cervical vertebra in his neck and a linear fracture of his scapula. There were other lacerations and abrasions and he suffered severe pain from his injuries.
Blakeney did not know how the accident happened and testified that the last thing he remembered on November 7, 1974, was bright lights in his eyes. He did not remember going to Mize or where he was when the accident happened. On cross examination, in answer to the question, “You don’t know when and where those bright lights were, you just remember that that was the last thing you recall for several days?” Blakeney replied, “That’s — that’s all I remember is bright lights in my eyes.” He also testified that he remembered that he knew sometime prior to the accident that the roadway was under construction.
Harry Bush, president of the defendant corporation, was called by the plaintiff as an adverse witness, and plaintiff is bound by that part of his testimony that was not contradicted by other witnesses or physical facts. Bush testified that his company was not informed and did not know that there had been an accident until about five months after it happened. His testimony established that at the time the accident happened the paved portion of the highway had already been widened to 24 feet and that there was a temporary center line on the road. He was cross examined at length about the signs from the beginning of the construction work up to the point where the accident happened. His testimony established without dispute that plaintiff had passed the following signs in a little over three miles he had traveled before his vehicle left the highway. They are: “Road Construction 1,500 feet,” “Road Construction 1,000 feet,” “Road Construction, 500 feet,” next a sign showing the project number then “Low Shoulder,” “Flagman Stop, One Lane Ahead,” “Low Shoulder”, with a 35 miles per hour warning, “Do Not Pass,” “Do Not Pass,” “Pass with Care,” “Danger, Trucks Entering Highway 1,000 feet,” “Do Not Pass,” “Low Shoulder,” “Pass With Care,” “Do Not Pass,” “Low Shoulder,” with a 35 miles miles per hour warning, “Do Not Pass.” In addition to these signs there were other signs, in fact the testimony established that there were 28 signs from the time plaintiff first entered the construction area to the point of the accident. The last low shoulder sign was about four-tenths of a mile from where the vehicle left the road and the last sign was a “Do Not Pass,” about three-tenths of a mile from the point of the accident and a “Pass with Care” sign about one-tenth of a mile east of the point of the accident.
At the conclusion of the testimony and after both sides had rested, Bush renewed its motion for a directed verdict that it had made when plaintiff rested his case. This motion was overruled. After the jury verdict, Bush made a motion for a judgment notwithstanding the verdict of the jury, which was likewise overruled.
On appeal Bush contends that the trial court was in error in overruling its motion for a directed verdict, peremptory instruction and a judgment notwithstanding the verdict for the reason that there was no evidence of negligence on its part and its conduct was not a proximate or concurring cause of Blakeney’s injuries. We are of the opinion that this contention is well taken and the trial court should have sustained the motion for a peremptory instruction at the conclusion of the evidence and in failing to do this, it should have sustained the motion for a judgment notwithstanding the verdict of the jury.
The testimony is undisputed that Bush complied with every contractual provision of its contract with the highway department relative to the posting of signs along *1373 the highway under construction. Don Mil-ner was the project engineer with the Mississippi State Highway Department on the job and he testified as to the signs required and that these requirements were fully met.
There is no question that the road here involved was under construction or undergoing repairs, although it was open to the general public, traffic was restricted. The purpose of the many signs that were placed along the highway was to warn the general traveling public and to restrict their travel while traversing the section of the highway under construction. They were sufficient to warn the general public to restrict their travel. It is in this case as it was in Reeves v. W. E. Blain & Son, Contractors, 276 So.2d 461 (Miss.1973), where we said:
It is abundantly clear from the record presented that the area in which the fatal and tragic accident occurred was an area which was permeated and saturated with evidences that construction was going on. To the extent that a sign situated by the highway and facing south advised motorists traveling the area of Highway 51, over which Reeves traveled, to reduce speed traffic was not unrestricted. (Emphasis added). (276 So.2d at 463).
It is clear that the contractor in this case discharged his duty to warn the traveling public, including plaintiff, of the hazards to be encountered while traveling the road under construction. The signs in this case were sufficient in the eyes of the law to require plaintiff, or any other person traveling the highway, to anticipate that at some point along the way he might encounter low shoulders or other hazards.
Plaintiff charged that Bush was negligent because it did not have signs at the particular place or point where his vehicle left the highway. In Gordon v. Illinois Central RR., 190 Miss. 789, 1 So.2d 772 (1941), we stated:
Moreover, the principle was announced on good authority in the case of Graves et al. v. Johnson, 179 Miss. 465, 176 So. 256, and in the companion case of Graves et al. v. Hamilton, 184 Miss. 239, 184 So. 56, that when one is sufficiently warned that a public thoroughfare is under construction or undergoing repairs, he should exercise a vigilant caution and keep a constant lookout for dangers incident to the progress of the work. This rule is sound, and was followed and reaffirmed in the case of Myers v. Sanders et al., 189 Miss. 198, 194 So. 300, wherein it was held, in substance, that it is not required, in the exercise of reasonable care under such circumstances, that barricades should be placed around or in front of obstructions or other like situations of danger that may be found within the space included between other nearby barricades which are sufficient in themselves to warn a motorist that he should reasonably expect to encounter to his own detriment such impediments to safe travel if he should fail to exercise reasonable care for his own safety by keeping a constant lookout and a vigilant caution as he proceeds within the condemned area. The rule there announced should apply with equal reason to a pedestrian. (Emphasis added). (190 Miss, at 794, 1 So.2d at 773, 774).
The contractor was not required to have signs along every foot of the highway that was under construction. All that was necessary was that there be sufficient signs to adequately warn the traveling public of the danger likely to be encountered. The signs in this case were sufficient. The signs were sufficient to warn the plaintiff of the danger of low shoulders and sufficient to require him to keep a constant lookout and vigilant caution for his own safety as he proceeded through the area under construction. There is nothing in the evidence in this case to indicate that Blakeney proceeded with vigilant caution or kept a constant lookout for any hazard on the road. In fact, the physical facts indicate that he was proceeding in a manner which shows an utter disregard relative to any hazard that he might encounter on the highway. When a vehicle is traveling at a speed fast enough to leave the highway, travel 300 feet, knock down a light pole, then sideswipe a large *1374 tree, and finally come to rest upside down 600 feet from the point it left the highway, this indicates that the driver was not using vigilant caution or keeping a constant lookout, but instead he was driving in utter disregard of any hazard he might encounter.
Appellee cites and relies on Webb v. Brock, 232 Miss. 154, 98 So.2d 139 (1957), as being in point and controlling in this case. The only similarity between the present case and the Webb case is that both cases involve a road under construction. The facts in Webb were that Clarke County contracted with Webb to put a bituminous surface on a rural road which the county had prepared for surfacing. In order to prepare the road for the paving it was necessary to break the surface and apply water to get the proper moisture content. Webb used tank trucks to apply the water and on the night of the accident the vehicle in which Brock was a passenger collided with a tank truck being operated on the left side of the road. The lights blinded the driver of the car to the extent that he could not determine on which part of the road the water truck was traveling. The driver took his foot off the gas and kept his car on the extreme right side of the road, but in spite of this it collided headon with the water truck. There were no warning devices or signs of any kind along the roadway and in this regard this Court stated:
The public traveled the road daily, and no effort was made on the part of the contractor, public officials, or anyone else, to regulate, control or interfere with traffic over the road. There were no warning signs, barriers, barricades, or other devices to warn the traveling public of dangerous conditions on the road. The public had free and unrestricted use of the road, although there was maintained at all times a sign at the termini of the project about three feet by six feet in size, known as “project signs”. These signs were located on the right of way but not on the traveled portion of the road. The proof does not disclose the exact wording of these signs, but it appears they showed a project number and a statement indicating the road was under construction with State and Federal aid. It fairly appears that these signs were not designed to restrict travel over the road, or to wain of danger. (232 Miss, at 161, 162, 98 So.2d at 141).
The trial court submitted the question of whether the contractor was guilty of negligence to the jury and it rendered a verdict in favor of Brock.
On appeal the contractor contended that the trial court was in error in refusing its request for a peremptory instruction for the reason that the driver of the vehicle in which appellee was riding failed to exercise the care required of one traveling a road under construction, and that his negligence was the sole cause of the accident. The contractor cited and relied upon a number of cases including those cited in Gordon v. ICRR, supra. We held that these cases were not applicable because of the failure of the contractor to post signs to warn the traveling public of the hazards to be encountered. In so holding we said:
As the contractor in charge of the construction of the road, appellant-Webb was under the duty to warn the public of the hazards to be encountered when traveling the road. We would not undertake to say that warning devices should have been maintained. In general, it is sufficient to say that Webb should have maintained barriers, barricades, signs or other warning devices readily and easily seen by those using the highway, and which would be sufficient in the eyes of the law to require a traveler on the highway to anticipate that at some near point in his progress he would encounter a truck in operation on its left side of the highway. (Emphasis added). (232 Miss, at 165, 98 So.2d at 142).
We held that under the facts of that case it was a jury question as to whether the driver fulfilled his duty to use ordinary care in the operation of his vehicle. In the case before us, although the highway was open to the general public, travel was not unrestricted. Here, the contractor maintained reflector signs easily seen at night warning *1375 the traveling public to anticipate hazards and particularly the hazard of low shoulders. It is undisputed that Blakeney passed at least four signs warning him of the low shoulders and the last one he passed was only four-tenths of a mile from the point where his vehicle left the highway. It is evident that he passed this sign less than a minute before the accident. Because of the difference in the factual situation, our decision in Webb v. Brock, supra, is not in point or controlling in this case.
Furthermore, the evidence in this case is insufficient to show that the low shoulders caused or contributed to the accident. The low shoulders certainly did not cause appel-lee’s car to leave the paved portion of the highway. There is no substantial evidence from which it could be said that the low shoulders caused the appellee to lose control of his vehicle. The only thing in evidence that might indicate that low shoulders could have caused appellee to lose control of his car was the testimony of one witness who said that he saw skid marks at the place where the car left the highway. All the testimony showed that the car left the highway and traveled practically straight to the place where it struck the light pole. This does not indicate that the alleged drop-off caused appellee to lose control of his vehicle, but instead refutes the idea that it did. Appellee did not know what caused his vehicle to leave the paved portion of the highway. Although the declaration charged that appellee met a vehicle proceeding in the opposite direction with its lights burning and when he moved his vehicle to the right side of the road his tires caught the hazardous edge of the shoulder causing him to lose control of his vehicle, there is no proof to substantiate this charge. The Only indication that Blakeney might have been meeting another vehicle is the statement that the last thing he remembered is bright lights in his eyes. He did not know when and where he was when he saw the bright lights. There is no other evidence to show why his vehicle left the paved portion of the highway. A somewhat similar situation existed in Mississippi Export Railroad Co. v. Miller, 193 So.2d 134, (Miss.1966). There Miller brought suit and recovered a judgment against the railroad for its alleged negligence in failing to keep proper and even grades in the highway so that its tracks could be easily crossed. There, as here, the driver could not remember what happened. We stated in the opinion:
A summary of the appellee’s testimony shows conclusively that he did not know what happened; that he lost control of his automobile after it had passed over the tracks and that he did not know what caused him to lose control. He did not know how fast he was going at the time he crossed over the tracks in the curve on the River Road. He did not remember striking the bridge over the canal. He remembered only coming upon the bridge, but he did not know how he got into the ditch or into the canal. (193 So.2d at 135).
We then pointed out that the statute imposed a duty on the railroad to construct and maintain convenient crossings and to keep such crossings in good order, but that statute did not place the duty on the railroad to make crossings safe and easy under any and all circumstances. The court then said:
A careful review of the testimony of the appellee in this case convinces us that it provided no evidence of any defect or insufficiency in appellant’s crossing that caused or contributed to the lamentable accident in which the appellee sustained a broken leg and head and scalp wounds. The appellee’s testimony indicated that he entered the curve and crossing as he approached the bridge at a very rapid and dangerous rate of speed. The proof shows that his car traveled ninety-one feet beyond the tracks before it jumped the canal and buried its front end in the northern bank thereof.
The verdict and judgment of the lower court is not supported by substantial competent evidence establishing that the condition of appellant’s crossing was the cause or a contributing cause of the loss of control of the automobile by the appel-lee and the resulting accident. The well *1376 established rule is that where the verdict is not supported by substantial competent evidence or is clearly contrary to the overwhelming weight of the evidence, the verdict will be set aside. Authority for this rule is so well-known that no citation is necessary.
For these reasons, the judgment of the lower court is reversed and judgment is entered here for the appellant (193 So.2d at 136, 137).
The evidence in this case before us shows conclusively that the appellee did not known what happened and that he did not know what caused his vehicle to leave the paved portion of the highway. The evidence indicates that appellee was driving his vehicle at a very rapid and dangerous rate of speed. There is no substantial evidence that the condition of the shoulder of the highway was the cause or the contributing cause of the loss of control of the automobile by the appellee and the resulting accident.
For the reasons stated, we are of the opinion that the trial court was in error in overruling appellant’s motion for a judgment notwithstanding the verdict of the jury. Consequently, this case is reversed and a judgment entered here in favor of appellant.
REVERSED AND RENDERED.
SMITH, P. J., and ROBERTSON, SUGG and BROOM, JJ., concur.
PATTERSON, C. J., and WALKER, LEE and BOWLING, JJ., dissent.
EN BANC: