# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00506-SCT

*WAYNE JOHN PATOUT*

*v.*

*LAURA J. PATOUT*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/17/1997 |
| TRIAL JUDGE: | HON. WILLIAM H. MYERS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DONALD P. SIGALAS |
| ATTORNEY FOR APPELLEE: | WILLIAM T. REED |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | VACATED AND REMANDED - 2/25/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/12/99 |

**BEFORE PITTMAN, P.J., SMITH AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Laura J. Patout filed her complaint for divorce on July 11, 1994. An order of temporary relief was entered by Chancellor Kenneth B. Robertson on August 25, 1994. Chancellor Robertson erroneously believed he was entering a final order. Therefore, he entered a corrected opinion and removed himself from the proceedings since he felt the parties might assume he was predisposed to make the same award he had erroneously entered before.

¶2. Chancellor William H. Meyers entered a final judgment on August 29, 1996, awarding a divorce to Wayne Patout based on his proof of Laura Patout's adultery. Custody of the two sons, Joshua and Jason, was awarded to Ms. Patout, and the chancellor distributed the marital property. Wayne Patout filed a Motion to Alter or Amend or for a New Trial on September 9, 1996. A property settlement agreement was signed March 14, 1997, and the chancellor entered an Amended Judgment to conform with the property settlement agreement. Aggrieved by the Chancery Court's judgment, Mr. Patout appeals assigning the following issues as error:

> **I. WHETHER CUSTODY OF THE TWO MINOR CHILDREN, JOSHUA AND JASON PATOUT, SHOULD HAVE BEEN AWARDED TO LAURA PATOUT.**

> **II. WHETHER THE COURT ERRED IN FAILING TO MAKE FINDINGS OF FACT**

**AND CONCLUSION OF LAW.**

**STATEMENT OF THE FACTS**

¶3. The parties were married for more than ten stormy years in which divorce proceedings were commenced several times with Ms. Patout accusing Mr. Patout of cruel and inhuman treatment and Mr. Patout claiming Ms. Patout committed adultery. Mr. Patout, at age 48, had been married three times before. Ms. Patout, at age 27, came into the marriage with one daughter, Melody. By age 14, Melody had been in counseling and treatment at least twice. The marriage produced two sons: Joshua Wayne Patout born July 29, 1986 , and Jason Paul Patout, born March 11, 1988. The sons are the center of this custody dispute.

¶4. Since the final separation, the boys have lived with their mother the majority of the time although she admits leaving them with various friends and babysitters much of the time due to her work schedule. There are disputes over who has taken the boys to church, whether the people who have cared for the boys were fit, and what emotional trauma has been visited upon the boys during the marriage and separation. However, the report cards of the boys indicate they are intelligent and fit in well in school.

## I. WHETHER CUSTODY OF THE TWO MINOR CHILDREN, JOSHUA AND JASON PATOUT, SHOULD HAVE BEEN AWARDED TO LAURA PATOUT.

¶5. We have clearly defined the standard we use to review child custody issues. Review is "'quite limited in that the chancellor must be manifestly wrong, clearly erroneous, or apply an erroneous legal standard in order for this [C]ourt to reverse.'" *M.C.M.J. v. C.E.J.*, 715 So. 2d 774, 776 (Miss. 1998)(*quoting Wright v. Stanley*, 700 So. 2d 274, 280 (Miss. 1997)).

¶6. The *Albright* factors, now the standard for awarding child custody, were set out by the Court as follows:

> Age should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school, and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.

*Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

¶7. Mr. Patout questions the chancellor's ruling based on the following factors which he believes weigh in his favor: (1) health of the child, (2)continuity of care prior to separation, (3) parenting skills, (4) physical and mental age and health of the parents, (5) moral fitness of the parents, and (6) stability of the home environment of each parent.

### A. *Health of the Child*

¶8. Mr. Patout contends that Ms. Patout's recurring smoking problem contributes to Joshua's upper

respiratory problems and intermittent asthma. Ms. Patout contends she has quit smoking for good this time.

### B. Continuity of Care Prior to Separation

¶9. Mr. Patout stated he was the primary care giver for the children for the six months prior to the separation since Ms. Patout was working various shifts. Ms. Patout admits her irregular hours require that she leave the children with babysitters often. However, she contends she is the primary care giver for the children and has been since their birth.

### C. Parenting Skills

¶10. Mr. Patout and Ms. Patout each introduced witnesses who testified about their parenting skills. Testimony elicited by Mr. Patout included allegations that Ms. Patout left the children with men who were drunk, was a bad housekeeper, and failed to properly feed her children. Ms. Patout produced testimony from friends and an employee of the Department of Human Services that her housekeeping was adequate, that circumstances demanded she leave the children with an acquaintance once until a babysitter arrived, and that she always made sure the children were ready for school.

### D. Physical and Mental Age and Health of the Parents

¶11. Mr. Patout claims that since Ms. Patout was taking medication for depression, she was unable to adequately care for the children. He also notes that she has had bladder surgery, knee problems, and a hysterectomy. Mr. Patout has a heart condition which keeps him from full time work and he testified that he has only "25% heart function."

### E. Moral Fitness of the Parents

¶12. Mr. Patout contends that Ms. Patout's adultery should weigh heavily against her when awarding custody. He also suggests she has been involved with various men, smoked marijuana, and stole items of marital property from him against court order. Ms. Patout contends she has not been involved with various men and has not smoked marijuana since before her sons were born. She claims Mr. Patout has lied to the court about his income.

### F. Stability of the Home Environment of Each Parent

¶13. Mr. Patout contends Ms. Patout's erratic work schedule and her daughter Melody's problems create an unstable home environment. Melody has been in counseling and has a tendency to sneak out of the house at night while Ms. Patout is at work. She wrecked the family car on one of her outings when she was only 13 years old.

¶14. A review of the record leaves underlying facts in dispute and credibility resolutions to be made. It permits more than one finding with a basis in evidence. Therefore, we must address the chancellor's duty to record findings of fact and conclusions of law before we reach the custody issue.

## II. WHETHER THE COURT ERRED IN FAILING TO MAKE FINDINGS OF FACT AND CONCLUSIONS OF LAW.

¶15. The Mississippi Rule of Civil Procedure provides a method whereby any party may request the specific basis on which a chancellor made a ruling. Rule 52 (a) provides:

**Effect**. In all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly.

**M.R.C.P. 52(a).** In addition, Rule 4.01 of the Uniform Chancery Court Rules titled "Findings by the Court" provides:

> In all actions where it is required or requested, pursuant to M.R.C.P. 52, the Chancellor shall find the facts specially and state separately his conclusions of law thereon. The request must be made either in writing, filed among the papers in the action, or dictated to the Court Reporter for record and called to the attention of the Chancellor.

**U.C.C.R. 4.01.**

¶16. In *Lowery v. Lowery*, 657 So. 2d 817 (Miss. 1995), we looked to Rule 52(a) of the Federal Rules of Civil Procedure for guidance. *Id.* at 819. Federal case law indicates it is proper for the appellate court to vacate and remand a judgment when the lower court has failed to make findings of fact and conclusions of law as requested. *Id.* (citing *Liddell v. Board of Educ.*, 20 F.3d 324 (8th Cir. 1994); *In re Incident Aboard D/B Ocean King*, 758 F.2d 1063, 1072 (5th Cir. 1985)). However, we also noted in *Lowery* that appellate courts may decide such custody issues without further findings when possible. *Lowery*, 657 So. 2d at 819 (*citing Matter of Holloway*, 955 F. 2d 1008, 1015 (5th Cir. 1992)). In *Holloway*, the court found it was able to decide on appeal since the underlying facts were undisputed, there were no credibility resolutions to be made, and there was no view of the record that would permit a different finding than the one the lower court reached.

¶17. In the instant case, Mr. Patout requested specific findings of fact and conclusions of law in his Motion to Alter or Amend or for a New Trial. When the chancellor denied this motion, he failed to make the findings Mr. Patout requested.

¶18. Ms. Patout suggests the reason that chancellor failed to make these findings was that he was misled by counsel for Mr. Patout. After the Motion to Alter or Amend or for a New Trial was filed, a property settlement agreement was entered by the parties. Counsel for Mr. Patout then sent a letter to the chancellor requesting the following:

> It appears that the parties have now entered into an agreement on all issues except custody.

> I would request that an amended Judgment be entered by the Court taking into consideration the issues amicably resolved in the attached agreement and Mr. Patout's position as set forth in our arguments and testimony taken pursuant to out Motion to Alter or Amend.

In his oral argument on the motion, counsel for Mr. Patout did not mention his request for findings of fact and conclusions of law. Ms. Patout suggests the failure of counsel to point out the remaining request for findings misled the chancellor and suggests chancellors should not be required to "read the pleadings with a microscope."

¶19. In as much as the Chancellor was required by our rules to make such findings and conclusions, he was in error. It does not appear that the chancellor in this case deliberately refused to make the findings

requested by Mr. Patout. In fact, it seems the mounting paperwork and counsel for Mr. Patout's admitted general motion without further request for such findings led the chancellor to overlook this obligation. As Mr. Patout notes and federal case law instructs, Rule 52 is not jurisdictional. We can decide a case where further findings of fact are unnecessary.

¶20. However, this case appears distinct from the *Holloway* case we referred to in *Lowrey*. The underlying facts are disputed, there are credibility resolutions to be made, and a review of the record would permit a finding for either party. Without specific findings of fact and conclusions of law by the Chancellor, we are unable to review properly the child custody decision. Therefore, the chancellor's amended custody judgment is vacated, this case is remanded to the Jackson County Chancery Court for entry of specific findings of fact and conclusions of law pursuant to M.R.C.P. 52(a).

¶21. **VACATED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**