851 So.2d 408 (2003)
MISSISSIPPI DEPARTMENT OF TRANSPORTATION, State of Mississippi, Appellant,
v.
Susan TROSCLAIR and Bridget Trosclair (Bailes), Appellees.
No. 2002-CA-00263-COA.
Court of Appeals of Mississippi.
July 29, 2003.
*410 Patrick R. Buchanan, Biloxi, attorney for appellant.
Joseph H. Montgomery, Lampton O. Williams, Poplarville, attorneys for appellee.
BRIDGES, J., for the Court as to sections A, B, C, and D.
¶ 1. Susan Trosclair and Bridget Trosclair Bailes filed a lawsuit on March 2, *411 1995, against the Mississippi Department of Transportation (The Department). The lawsuit arose when Susan and Bridget were injured in a one-car accident that occurred on December 3, 1993. The Department filed a motion to dismiss for failure to give timely notice and failing to file within one year of the date of injury. The Department also filed a summary judgment motion addressing the issues of notice, estoppel, limitations and the constitutionality of the Mississippi Tort Claims Act. Bridget and Susan filed a motion for partial summary judgment, requesting the court to find that the notice of claim and complaint were timely filed. The trial court denied the Department's motion to dismiss and their summary judgment motion and granted Bridget and Susan's partial summary judgment motion. The Department filed a second motion for summary judgment which was later granted by the trial court. On appeal, the Mississippi Supreme Court reversed the trial court's decision and remanded the case. Trosclair v. Mississippi Dep't of Transp., 757 So.2d 178 (Miss.2000)
¶ 2. On the morning of trial, the parties verbally stipulated that there were no longer any issues in this litigation pertaining to whether or not the Department received proper and/or timely notice of the claims and/or whether or not this litigation was timely commenced. On September 24, 2001, as required by the Mississippi Tort Claims Act, this case was tried as a bench trial before the Honorable Kosta N. Vlahos. On October 23, 2001, the judge found in favor of Bridget and Susan and awarded Susan $47,250 and Bridget $2,750. It is from that judgment that the Department now appeals to this Court. The issues on appeal are as follows:

STATEMENT OF THE ISSUES
I. DID THE TRIAL COURT ERR WHEN IT DETERMINED THAT THE DEFENDANT WAS NEGLIGENT?
II. DID THE TRIAL COURT ERR WHEN IT RETURNED A VERDICT AGAINST THE DEFENDANT FOR FAILURE TO PLACE WARNING SIGNS?
III. DID THE TRIAL COURT ERR WHEN IT RETURNED A VERDICT AGAINST THE DEFENDANT FOR FAILURE TO PLACE ADEQUATE WARNING SIGNS?
IV. DID THE TRIAL COURT ERR WHEN IT RETURNED A VERDICT AGAINST THE DEFENDANT WHEN THE DANGEROUS CONDITION WAS OPEN AND OBVIOUS?
V. DID THE TRIAL COURT ERR WHEN IT FAILED TO FIND THE PLAINTIFF BRIDGET TROSCLAIR BAILES, NEGLIGENT?
VI. DID THE TRIAL COURT ERR BY FAILING TO APPORTION A PERCENTAGE OF FAULT TO THE PLAINTIFF?
VII. DID THE TRIAL COURT ERR WHEN IT FAILED TO ENTER FINDINGS OF FACT AND CONCLUSIONS OF LAW?
VIII. DID THE TRIAL COURT ERR IN FINDING IN FAVOR OF THE PLAINTIFF WHEN THERE WAS SPOLIATION OF EVIDENCE?

FACTS
¶ 3. On December 3, 1993, Bridget was driving in a southerly direction on Highway 49 in Harrison County, Mississippi. Bridget was accompanied by Susan, her aunt by marriage. Bridget and Susan were en route to Alabama to pick up Susan's *412 daughter-in-law and this was Bridget's first time driving on Highway 49.
¶ 4. On or about November 2, 1993, the Department had started a maintenance asphalt paving project on the southbound lanes of Highway 49. The project was to be a 1.5 inch overlay over nine miles of the highway. The main overlay work was completed on approximately November 29, 1993. As Bridget and Susan headed south, they suddenly came upon the newly asphalted highway which did not have any yellow side stripe on the left or median margin of the highway, no white edge stripe on the right or shoulder margin of the highway, and only intermittent three to six inch small white marks placed near the approximate center of the twenty-four foot wide pavement at indeterminate lengths. There was also no temporary center striping of four foot lengths on the highway.
¶ 5. Bridget testified that she was driving on the newly paved highway for a little over a mile when she felt her right tire fall off the road. When Bridget tried to correct the situation, by steering her vehicle back onto the highway, her right front tire blew, causing her to lose control, and ultimately causing her vehicle to overturn.
¶ 6. Ruby Lynn Morris, who lived approximately five and a half miles from the scene of the accident and traversed Highway 49 daily, testified that she had observed Bridget's vehicle go off the road, come back on, and then off again, only to then flip and land in a tree. After seeing the accident, Morris pulled over to the side of the road to offer assistance and when she ran down off the pavement, she realized she had to get down off the pavement; it was in fact a step-off. She had to step down five to six and a half inches. Morris also stated that she did not recall seeing any traffic control signs on the day of the accident.
¶ 7. Michael A. Trosclair, Bridget's father, went to the scene on the night of the collision and inspected the entire area and observed that there were no markings or warnings in the project area. He also went back to the project site the next day in daylight and confirmed that there were no warning signs in the area. Michael testified that for at least 500 feet along the site of the accident there was a shoulder drop-off of three inches or more. Michael documented the drop-off where Bridget's tire left the road with a photograph, which showed the distance from the ground to the top of the asphalt to be the same distance as the length of a Cross pen, approximately 5.5 inches.

ANALYSIS
¶ 8. In discussing these eight issues, it is more intelligible to combine certain issues. In addition, because of the division of this Court on the questions involving the Department's and Bridget's negligence, those issues are discussed last.
¶ 9. I begin with the discussion of issues II, III, and IV which present the question:

Section A.

DID THE TRIAL COURT ERR WHEN IT HELD THAT THE MDOT'S ACTIONS DID NOT FALL UNDER A GOVERNMENTAL IMMUNITY EXEMPTION PROVIDED BY THE MISSISSIPPI TORT CLAIMS ACT?
¶ 10. This case was brought under the Mississippi Tort Claims Act, which allows negligence actions against state agencies under certain circumstances. Simpson v. City of Pickens, 761 So.2d 855, 860 (¶ 15) (Miss.2000). There is also a requirement that, if the matter comes to trial, it will be conducted as a bench trial. Id. In this situation, "the trial court sits as finder of fact and, when the court's factual determinations are challenged on appeal, *413 the reviewing court must consider the entire record and is obligated to affirm where there is substantial evidence in the record to support the trial court's findings." City of Newton v. Lofton, 840 So.2d 833, 835 (¶ 6) (Miss.2003); Ezell v. Williams, 724 So.2d 396, 397 (¶ 4) (Miss. 1998); Mississippi State Hosp. v. Wood, 823 So.2d 598, 601 (¶ 7) (Miss.Ct.App. 2002). "The findings of the trial judge will not be disturbed unless the judge abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." City of Newton, 840 So.2d at 835-36 (¶ 6); Stanton v. Delta Reg'l Med. Ctr., 802 So.2d 142, 145 (¶ 6) (Miss.Ct.App.2001).
¶ 11. "The standard of review for a judgment entered following a bench trial is well settled. `A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence.'" City of Newton, 840 So.2d at 836 (¶ 7); City of Jackson v. Perry, 764 So.2d 373, 376 (¶ 9) (Miss.2000) (citing Puckett v. Stuckey, 633 So.2d 978, 982 (Miss.1993); Sweet Home Water & Sewer Ass'n v. Lexington Estates, Ltd., 613 So.2d 864, 872 (Miss.1993); Allied Steel Corp. v. Cooper, 607 So.2d 113, 119 (Miss.1992)). "This Court reviews errors of law, which include the proper application of the Mississippi Tort Claims Act, de novo." City of Newton, 840 So.2d at 836 (¶ 7).
¶ 12. The principal Mississippi Code Annotated section relevant to this issue is Mississippi Code Annotated section 11-46-9(1)(a-x) (Rev.2002). This section is used to determine liability exemptions of governmental entities and their employees acting within the scope of their duties. Further, the pertinent subsections that apply include sections 11-46-9(1)(v) and (w). These sections state:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claims:
(v) Arising out of an injury caused by a dangerous condition on the property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care; (w) Arising out of the absence, condition, malfunction or removal by third parties of any sign, signal, warning device, illumination device, guardrail or median barrier, unless the absence, condition, malfunction or removal is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or constructive notice.
Miss.Code Ann. § 11-46-9(1)(v) and (w) (Rev.2002).
¶ 13. After reviewing all of the evidence, the trial judge determined that Bridget and Susan's injuries were caused by the negligence of the Department. The following facts and circumstances were established by the evidence: (A) there was a dangerous 3-5 inch drop-off along the irregular edge of the pavement that extended over 500 feet; (B) the hazardous condition resulting in the 3-5 inch drop-off and irregular pavement edge was created by the negligence and wrongful conduct of the Department employees; (C) the evidence clearly established that the Department through its employees, either knew or *414 should have known that this dangerous drop-off and irregular edge existed prior to the accident; (D) since the final paving in this area had been completed on November 29 or 30, the Department had adequate opportunity to protect or warn against the hazard created by the drop-off and irregular pavement area; and (E) the Department is liable for failing to warn of this dangerous condition since, as shown by the testimony, the hazard was not obvious to anyone including the investigating officer Otis Kaufman, and Ruby Lynn Morris, who was driving her vehicle behind Susan and Bridget.
¶ 14. The trial court, sitting as the jury, determined that the condition was not open and obvious, which is required for immunity to apply. The trial judge, before overruling a motion for a directed verdict, stated:
The time line that she [Bridget] had to react and discern that it was open and obvious is 1.1 mile and she's going 55 miles per hour.... At 60 miles per hour you're going a mile a minute, at 60.[sic] At 66 I guess you're going 1.25 or something like that a minute. So that's the time line that they had to go from a road that's marked to a road that's not marked as far as, you know, something that's open and obvious ... I just think this is a tough question because with all due respect to Mr. Buchanan we've got to rely on what I tell the jury; you are to evaluate the worth and credibility and believability of the testimony. In doing so you're supposed to use your good sense. And all of a sudden you're driving on a highway that is perfectly marked and, you know, within 1.1 miles you go off a roadbed that is not properly marked. I don't know how open and obvious it was in that narrow time frame of whatever seconds or minutes there were there that she came across this situation.
As stated above, there was also evidence that there were no warning signs or devices at the construction site or area in question which could have alerted Bridget to the dangerous condition. Based on evidence that the condition was not obvious and lacked adequate warning signs or devices, this Court finds that the trial judge made reasonable fact findings.
¶ 15. The trial court applied the correct legal standard and absent a showing that the findings of the trial court were manifestly wrong, clearly erroneous or that the trial court abused its discretion, the trial court's findings should not be disturbed.

Section B.

VII. DID THE TRIAL COURT ERR WHEN IT FAILED TO ENTER FINDINGS OF FACT AND CONCLUSIONS OF LAW?
¶ 16. Mississippi Rules of Civil Procedure Rule 52(a) specifically states:
In all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly.
¶ 17. In Tricon Metals & Services, Inc. v. Topp, 516 So.2d 236, 239 (Miss. 1987), the court stated that in cases of any significant complexity the trial court generally should find the facts specially and state separately its conclusions of law. However, the case sub judice is far from complex, and since the court did not make findings on its own accord, the only other option would be upon the request of any party to the suit.
¶ 18. The Mississippi Supreme Court stated that when a party requests specific findings of fact and conclusions of law in its post trial motions, it is error for the *415 trial court to fail to make such findings. Patout v. Patout, 733 So.2d 770, 773 (¶ 17) (Miss.1999). After a thorough examination of the entire record and an even closer look at the defendants' post-trial motion, we fail to find any request made for specific findings of fact and conclusions of law.

Section C.

VIII. DID THE TRIAL COURT ERR IN FINDING IN FAVOR OF THE PLAINTIFF WHEN THERE WAS SPOLIATION OF EVIDENCE?
¶ 19. It should first be stated that the issue of spoliation of evidence was not raised before the trial court nor was the issue raised in the Department's notice of appeal. The Mississippi Supreme Court has repeatedly held that an issue not raised before the lower court is deemed waived and is procedurally barred. Davis v. State, 684 So.2d 643, 658 (Miss.1996); Cole v. State, 525 So.2d 365, 369 (Miss. 1987), cert. denied, Cole v. Mississippi, 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 348 (1988). "Counsel may not sit idly by making no protest as objectionable evidence is admitted, and then raise the issue for the first time on appeal." Davis, 684 So.2d at 658 Since this issue concerning spoliation of evidence was not properly and timely raised, the Department is precluded from raising the issue for the first time on appeal.
¶ 20. However, to be thorough, we continue. In Stahl v. Wal-Mart Stores, Inc., the court held that "in the absence of bad faithi.e., evidence of culpability on the part of the spoliatorthen there can be no adverse influence or presumption... even when there is prejudice to the innocent party." Stahl v. Wal-Mart Stores, Inc., 47 F.Supp.2d 783, 787 n. 3 (S.D.Miss.1998). The court has further held that "it is a general rule that the intentional spoliation or destruction of evidence relevant to a case raises a presumption, or, more properly, an inference, that this evidence would have been unfavorable to the case of the spoliator." Tolbert v. State, 511 So.2d 1368, 1372-73 (Miss.1987) (quoting Washington v. State, 478 So.2d 1028, 1032-33 (Miss.1985)). "Such a presumption or inference arises, however, only when the spoliation or destruction was intentional and indicates fraud and a desire to suppress the truth, and it does not rise where the destruction was a matter of routine with no fraudulent intent." Id.
¶ 21. The Department claims that the plaintiffs and their attorney failed to preserve critical evidence; they failed to retain the tire that they allege sustained a blowout when it struck the raised area of the pavement as they entered the roadway. The relevant facts in the case sub judice show, the date of the accident was December 3, 1993, with the complaint being filed on March 3, 1995, and through the development of this case until the trial in September 2001, the Department never requested the production of the tire. Nor was there any inquiry concerning the tire in any of the discovery propounded by the Department. When defense counsel first raised questions concerning the tire at trial, Bridget's father explained what happened to the tire and it is clear that had the request for production been timely, the tire probably could have been located for the Department.
¶ 22. It is clear that there was no intent to destroy the tire or to deprive the Department of the opportunity to inspect it. With there being no evidence of culpability on the part of the plaintiffs, and even if the Department was given the presumption, the overwhelming evidence in this case was sufficient to rebut the presumption and fully supports the judgment of the trial court.

*416 Section D.

I. DID THE TRIAL COURT ERR WHEN IT DETERMINED THAT THE DEFENDANT WAS NEGLIGENT?
¶ 23. In regards to these issues concerning negligence, both parties cite the Mississippi Supreme Court case Jones. v. Miss. Dep't of Transp., 744 So.2d 256 (Miss. 1999). However, it is the finding of this Court that this case fully supports the judgment of the trial court in assigning fault to the Department. In Jones, there was a one vehicle accident that occurred at a "T" intersection and there was no stop sign at the end of the road nor were there any traffic control signs warning oncoming traffic that it was approaching a "T" intersection. Jones, 744 So.2d at 258 (¶ 2). The driver failed to stop, crossed the intersection, and crashed into a ditch. Id. As in the case sub judice, Jones raised the issue of whether the placement of traffic control devices was a discretionary act entitling the Department to protection from suit under the Tort Claims Act. During an extensive analysis of the claim, the court provided the following:
Even prior to the enactment of § 11-46-9(1)(w), a governmental entity had a duty to warn of a dangerous condition of which it has notice. In Coplin v. Francis, 631 So.2d 752, 755 (Miss.1994), this Court held that even where a government employee's actions are deemed to be discretionary, rather than ministerial, the question may remain as to whether the public was afforded adequate warnings of the dangerous condition.
Federal law also supports our conclusion. Applying a similarly worded exception to the FTCA, a federal district court has held: The discretionary function exemption is intended to protect public policy objectives. It would run counter to the discretionary function exemption to second-guess or micro-manage the kinds of steps appropriate to maximize safety in government facilities, even where the decisions are made below policy level. Within that broad discretion, reasonable steps of a type determined by management to minimize risks of personal injury are necessary. Failure to take any such steps where feasible is negligent and not within the discretionary function exemption, even though the particular nature of the appropriate steps is discretionary.
Id. at 263-64 (¶ 22-23) (citations omitted).
¶ 24. The evidence found in the record fully supported the trial court's findings that a proximate cause of the accident and the plaintiffs' injuries was the negligence of the Department in creating the dangerous condition and failing to protect or warn against the hazard. The facts in evidence that support this contention are as follows: (1) under Mississippi Code Annotated section 65-1-65 and section 65-1-67, the Department had duties to the public including: to maintain the highway, not to create a hazardous condition on the highway, and to protect and warn against any hazard on the highway; (2) the condition of the right edge of the highway and the shoulder presented a dangerous condition; (3) witnesses testified to the seriousness of the situation including the lack of striping on the road and the lack of warning signs or signals; (4) there is evidence that also supported the plaintiff's claim that the Department's breach of its duties was the proximate cause of the accident; and (5) there was also testimony that Bridget was a careful and prudent driver and was driving straight ahead in the right-hand lane when her right front tire dropped off the highway.
¶ 25. Whether the plaintiff had any fault in bringing about the accident is discussed below.
*417 SOUTHWICK, P.J., writing for the court as to section E.

Section E.
V. DID THE TRIAL COURT ERR WHEN IT FAILED TO FIND THE PLAINTIFF BRIDGET TROSCLAIR BAILES, NEGLIGENT?
VI. DID THE TRIAL COURT ERR BY FAILING TO APPORTION A PERCENTAGE OF FAULT TO THE PLAINTIFF?
¶ 26. When the Trosclairs brought suit, they claimed that the Department was solely at fault. In reply, the Department alleged that Bridget, the driver, was solely at fault. At trial, the dispute was whether both were at fault.
¶ 27. Those who are negligent and proximately contribute to an injury should be allocated a percentage of fault. Miss.Code Ann. § 85-5-7 (Rev.1999). The comparative negligence principle includes allocation of fault to a plaintiff. Based on the evidence before us, the failure to allocate at least some of the fault to Bridget rises to the level of manifest error.
¶ 28. The record contains undisputed evidence of the following:
a. It was daytime and the weather was clear;
b. The plaintiffs realized that they had entered an[a] stretch of road being repaved;
c. A drop-off from the fresh pavement to the unpaved shoulder was obvious, though the degree of elevation change was not clear; and
d. The edge of the pavement was clearly observable.
¶ 29. The plaintiffs take these facts, add some contested ones, and argue a number of failures of the Department. This Court has already explained why it finds the record to support that a proximate cause of injury was the Department's various failures. Even though the Department has been found to have failed in its responsibilities, in order for us to affirm we must also conclude that the plaintiff was without fault that was a proximate cause of the injury.
¶ 30. The obviousness of fresh pavement was admitted. The temporary center line markings were clear in the plaintiffs' own photographic exhibits. Bridget admitted that she could clearly see the edge of the fresh black pavement against the unpaved shoulder. The pictures introduced into evidence confirm the admission. Nothing the Department did caused her to run off the road, but the Department's failures may have caused her not to realize the full extent of the danger of doing so.
¶ 31. Roads that are undergoing repair are not required to be closed. Because of the importance of highways in modern life, the balance that has been struck is largely to leave roads open and make other adjustments such as slower speeds and occasional detours. The balance also requires that a driver upon entering a road she knows is undergoing repair to exercise vigilant caution. Graves v. Johnson, 179 Miss. 465, 176 So. 256, 259-60 (1937).
¶ 32. This duty was first recognized when the highway system was much different than today.[1] Still, this enhanced care required of motorists who encounter highway construction has been noted many *418 times since 1937. E.g., Reeves v. W.E. Blain and Son, Contractors, 276 So.2d 461, 463 (Miss.1973). Though Graves concerned a highway whose usable surface came to an end, the principle has been stated more generally "that when one is sufficiently warned that a public thoroughfare is under construction or undergoing repairs, he should exercise a vigilant caution and keep a constant lookout for dangers incident to the progress of the work." Bush Const. Co., Inc. v. Blakeney, 350 So.2d 1370, 1373 (Miss.1977). Bush involved a situation much like that which faced the Trosclairs, though in Bush the presence of highway construction warning signs was admitted while here it was disputed. In Bush the "highway was being resurfaced by layers of asphalt and at the point complained of the surface had been substantially raised but dirt had not been pulled up to the level of the road causing a dangerous and hazardous drop-off to those using the road." Id. at 1370-71. Whatever reasonably warns a driver of construction invokes the need for vigilance.
¶ 33. In Bush the contractor was found not to be negligent at all. In our case some fault on the part of the Department has been upheld. That does not exonerate the driver. A motorist on a freshly paved highway on which additional work is obviously remaining, cannot be found faultless when she in good weather, on a straight stretch of road, and without other explanation runs off the new pavement onto the unpaved and lower shoulder. The plaintiff-driver admitted that she knew that there was a drop-off. Bridget argues that she did not know that the drop-off was especially severe. The Court has concluded that the absence of warnings of the severity of the difference in elevation could properly be found a proximate cause of the accident. Still, under the evidence presented, some drop-off was anticipatable to a reasonable, non-negligent driver. Part of the needed anticipation is to drive in a manner so as to avoid running off the road.
¶ 34. Bridget alleges that had center and side stripes been present, the accident would not have occurred. However, since the edge of the roadway was clearly visible, it does not matter that a painted line might have more colorfully noted that edge. As to markings on the road center, even though both plaintiffs testified that there was no center striping, the plaintiffs' own photographs taken the day after the accident reveal intermittent splotches of white on the road center. Those are the proper temporary center line markings during repaving. Miss.Code Ann. § 65-1-67 (Rev.2001). Therefore, when Bridget argues that the absence of a temporary center stripe caused her more zealously to hug the outer edge of the pavement than she would have preferred, the factual predicate for her argument does not exist. The undisputed testimony establishes that Bridget was traveling at the speed limit for the area despite these concerns and was passing slower traffic in the construction area. If the striping was such as to cause doubts about maintaining her position on the roadway, then the obligation of care was to slow down.
¶ 35. The operator of a motor vehicle has a duty to keep the vehicle under proper control and to drive at a speed which is reasonable under the conditions that she faces. Upchurch ex rel. Upchurch v. Rotenberry, 761 So.2d 199, 205 (Miss.2000)(such an instruction was proper statement of law). Bridget did not meet the "vigilant caution" standard for drivers on roads under construction.
¶ 36. Therefore, even though this Court has found the Department to be negligent in the manner that it repaved this stretch of highway, Bridget also must *419 be allocated some fault. Bridget responds to the issue by asserting that the failure to assign her any fault was correct in part because the policy limit for the Department was $50,000. Thus, to allocate her fault might have kept her and Susan from making a total recovery. Two matters are important in response. First, the comparative negligence scheme is not to be manipulated by lowering percentages of plaintiff fault or increasing total damages in order to allow plaintiffs and their attorney to share in an award of all damages. A plaintiff who is at fault is not supposed to be compensated for all her damages since she contributed to them. Secondly, the trial judge found total damages to the plaintiffs to be $63,500. It would appear that this failure to apportion fault did affect the total recovery. The total damages were not much more than the policy limit. Even after allocating some fault to the Department, a fair appraisal of the plaintiff's fault may have caused the total recovery to be less than the policy limit.
¶ 37. We reverse and remand so that fault may be allocated to both parties.
¶ 38. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS REVERSED AND REMANDED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
LEE AND IRVING, JJ., CONCUR IN TOTO.
SECTION C: ALL JUDGES CONCUR.
SECTION E: SOUTHWICK, P.J., WRITING FOR THE COURT JOINED BY McMILLIN, C.J., CHANDLER AND GRIFFIS, JJ.
SECTIONS A, B, AND D: SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., CHANDLER AND GRIFFIS, JJ.
SECTION E: BRIDGES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., THOMAS AND MYERS, JJ.
SOUTHWICK, P.J., dissenting as to sections A, B, and D.
¶ 39. Respectfully, I dissent to Sections A, B, and D of the Court's opinion. Under a statutory exemption, a governmental entity is not liable in tort if a supposedly dangerous condition that otherwise would cause liability was obvious to a reasonably observant person. The trial judge implicitly found that the dangerousness of the drop-off from the new pavement was not obvious. I believe that was error. I also address a motion regarding the trial judge's need to make findings of fact and conclusions of law.

1. Governmental Immunity
¶ 40. Tort claims against the Department and other governmental entities are controlled by statute. Miss.Code Ann. §§ 11-46-1 through 11-46-23 (Rev.2002). Among the provisions is a section containing a variety of exemptions from liability. Included are claims such as the following:
Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care. *420 Miss.Code Ann. § 11-46-9(1)(v) (Rev. 2002).
¶ 41. The related but non-statutory "open and obvious" defense applicable to private parties is a component of comparative negligence. It is not a complete bar to recovery unless the plaintiff's failure to notice an obvious defect is the sole proximate cause of injury. Tharp v. Bunge Corp., 641 So.2d 20, 25 (Miss.1994). The approach of the governmental immunity statutes is rather different than usual negligence rules. The legislature declared that sovereign immunity would bar liability in tort except as waived in the Act. Miss. Code Ann. §§ 11-46-3 & 11-46-5 (Rev. 2002). The statutory defense that there is no obligation to warn of an obviously dangerous condition is an absolute bar to recovery based on a failure to warn. See Jim Fraiser, "A Review of the Substantive Provisions of the Mississippi Governmental Immunity Act," 68 MISS. L.J. 703, 829-830 (1999).[2]
¶ 42. The exemption is in two parts. First, it provides that if the dangerous condition on government property was not caused by a negligent or wrongful act of an employee, then there is no liability. Whether it is negligence to leave an overlay of pavement five and a half inches above the level of the adjacent unpaved shoulder is one question. Another is that even if it was not negligence to have such a drop-off during the road work process, it might be negligence not to have warning signs notifying of the change in levels. The second principal part of the exemption concerns dangerous conditions "of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against...." Miss.Code Ann. § 11-46-9(1)(v) (Rev.2002). Since the first part of the exemption provides that there is no liability if it was not a governmental employee who created the hazard, the issue of notice and warnings may apply only to hazards that were created by such an employee. Regardless, our allegedly dangerous condition was created by a governmental employee.
¶ 43. I find no potential negligence here other than the absence of warning signs. Therefore, if the signs would merely have warned of the obvious, there is no liability. As the statute states, the issue is not whether the dangerous condition was obvious to this particular plaintiff, but instead the issue is whether it was obvious to someone exercising "due care." Miss. Code Ann. § 11-46-9(1)(v) (Rev.2002). The evidence is uncontradicted that the highway was obviously incomplete. Witnesses, including driver Bridget Trosclair Bailes, testified to fresh, dark asphalt at the site. There was a temporary set of intermittent white splotches near the approximate road center, but no stripes on the sides of the road. Without doubt, the highway was undergoing construction or repair.
¶ 44. For the plaintiffs to recover, there must have been a dangerous condition that was not obvious and for which some warning was needed. If warnings of a nonobvious danger were needed, some liability on the part of the Department may exist.
¶ 45. The trial judge made no findings, a point that complicates our task. Such findings would have aided our review as *421 opposed to being superfluous as the majority holds. If he found that the danger of running off the road was not obvious at all, then I would conclude that was error. If he found that Bailes had maintained vigilant caution regarding her driving, I would find that to be error. However, if on remand the trial the court identified what it was that the Department committed or omitted that contributed to the accident, then I would evaluate that for support in the evidence.

2. Findings
¶ 46. A procedural rule requires that after a bench trial, findings of fact and conclusions of law are to be entered if requested:
In all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit ..., find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly.
M.R.C.P. 52(a). The principal dispute on the point is whether the Department made an adequate request. Instead of making a distinct motion, the Department alleged as an issue in its motion for new trial that it was error not to make findings of fact and conclusions of law. The motion was denied without comment on the alleged error regarding findings.
¶ 47. The order in which the decision of the trial court was announced was two pages long. Almost the entire first page discussed the $50,000 limit on the Department's insurance policy. Then without stating why the Department was liable, the court wrote that after "due consideration of the evidence, the Court has determined" that one plaintiff suffered $60,000 in damages and the other $3,750. The remainder of the order reduces the total damages proportionately to the policy limit. Which among the theories of causation and liability led to the result is unstated.
¶ 48. Two issues arise from the manner in which the Department raised the issue. First, this was not a "request" to make findings as stated in Rule 52(a), but an allegation of error for not having made findings. Even after the judge read this motion closely and considered the import of the point, there may have been doubt whether this should be considered a request. Since we are remanding, it is not necessary to reach a definite conclusion as to the sufficiency of this form of request. Still, trial judges should be willing to make findings even if arguably the request has not been properly made, to assist both the parties and an appellate court in understanding the judgment.
¶ 49. The other problem is that Rule 52(a) was not mentioned. I find no credible basis on which to make the failure to cite the rule as controlling. No Mississippi precedent that I have found has required that the rule be specifically mentioned. This rule is neither obscure nor complicated. Even without citation to the rule, an explicit request for findings after entry of the judgment in a bench trial sufficiently alerts the trial judge that Rule 52 is being invoked.
¶ 50. This is the mirror image of the position the Court has already taken, that the form in which the trial judge makes the findings is not central to compliance with Rule 52(a).
The purpose of the Rule is to obtain a detailed explanation of a bench trial result when requested. It does not matter that the court dictated one in open court for the court reporter to transcribe, or dictated one while in chambers for a secretary to type. It is the content that matters, not the place at which the judge is sitting when expressing his reasoning. *422 Davis v. Dooley, 829 So.2d 712, 715 (Miss. Ct.App.2002). Thus, the objection to the findings that they had to be contained in a writing separate from the transcript was rejected. Id. at 715-16.
¶ 51. We should reject that the request has to be in a separate writing from the motion for new trial. Substance, not form unless it provides demonstrable value, controls here.
¶ 52. Considering that the findings issue was buried in a motion containing several allegations of error, the trial judge's failure to respond was understandable. Since we are remanding for further proceedings, I will simply note that any future request by either party should more closely conform to the requirements of Rule 52 in order to avoid any ambiguity.
McMILLIN, C.J., CHANDLER AND GRIFFIS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
BRIDGES, J., dissenting as to section E.
¶ 53. With respect to my colleagues in the majority, I am of the opinion that they reached a wrong decision regarding the reversal and remand of the judgment of the Harrison County Circuit Court. I am concerned with the reasoning and case law presented in the majority's opinion, and believing that the record provides ample evidence to affirm the trial court's judgment, I dissent.
¶ 54. My concern is in the discussion of issues I, V, and VI, which involve whether the trial court erred when it determined that the defendant was negligent, whether the trial court erred when it failed to find the plaintiff, Bridget Trosclair, and whether the trial court erred by failing to apportion a percentage of fault to the plaintiff. While I agree with the majority that fault should be allocated to the Department, I strongly disagree that fault should be allocated to Bridget as well. I feel that the allocation of fault is well within the discretion of the fact finder and in this case he chose not to assign fault with the driver.
¶ 55. It may appear that Bridget may have been negligent in her driving but the facts in the record indicate that she was going the speed limit of 55 m.p.h. and driving in a careful and prudent manner. The Department's appellate brief claims that the investigating trooper documented that Bridget's inattention while driving contributed to this accident. However at trial, the trooper testified that, when he arrived at the scene twenty minutes after being notified of the accident, he first went down to check on the occupants of the vehicle and then tried to locate where the vehicle ran off the road. After that he started to fill out his report and in the report where it stated contributing circumstances, he filled in driver inattention. The trooper also testified that since the accident report was a form, he had to mark something. This writer does not see how the trooper could have observed her driving when he arrived at the scene twenty minutes after the accident happened. Taking the above stated facts as a whole, we find that the trial judge obviously considered this matter in making his decision.
¶ 56. Under the facts in the record, I feel apportionment for the alleged liability of Bridget Trosclair Bailes would be inappropriate. It is also evident in the record that the trial court judgment took into consideration the statutory liability limits set out in Mississippi Code Annotated section 11-46-15(1)(a) in making the award. This section states:
(1) In any claim or suit for damages against a governmental entity or its employee brought under the provisions of this chapter, the liability shall not exceed the following for all claims arising *423 out of a single occurrence for all damages permitted under this chapter:
(a) For claims or causes of action arising from acts or omissions occurring on or after July 1, 1993, but before July, 1, 1997, the sum of Fifty Thousand Dollars ($50,000)....
¶ 57. Even if Bridget may have been negligent, I feel the trial court judge certainly considered this in making his decision.
¶ 58. Therefore, I find that these issues are without merit and the trial court's decision should be affirmed as to all issues. Therefore, I respectfully dissent.
KING, P.J., THOMAS AND MYERS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] Greyhound Lines, Inc. v. Sutton, 753 So.2d 1105, 1120, 1124-25, 97-CA-00634-COA (¶ ¶ 61-66) (Miss.Ct.App. Dec. 7, 1999) (Southwick, P.J., concurring; opinions withdrawn upon granting of writ of certiorari); aff'd in part, rev'd in part, 765 So.2d 1269 (Miss. 2000).
[2] The author of the article referred to an unpublished and thus non-precedential opinion: Id., citing Barfield v. Calhoun City, 704 So.2d 468 (table), 95-CA-01312-COA (Miss. Ct.App., Nov. 18, 1997). Since then, this Court again raised the question of the applicability of Tharp to a city's immunity under § 11-46-9(1)(v), but said that the issue need not be resolved "since the trial court made a reasonable fact finding that this condition was not an obvious one." City of Newton v. Lofton, 840 So.2d 833, 837 (Miss.Ct.App.2003).