# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01750-COA

APRIL SERRANO                                                             APPELLANT

v.

LAUREL HOUSING AUTHORITY                                                  APPELLEE

DATE OF JUDGMENT:            09/26/2013
TRIAL JUDGE:                 HON. BILLY JOE LANDRUM
COURT FROM WHICH APPEALED:   JONES COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      K. DOUGLAS LEE
ATTORNEY FOR APPELLEE:       STEVEN LLOYD LACEY
NATURE OF THE CASE:          CIVIL - PERSONAL INJURY
TRIAL COURT DISPOSITION:     BENCH-TRIAL VERDICT IN FAVOR OF
                             APPELLEE
DISPOSITION:                 AFFIRMED - 11/18/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., ROBERTS, CARLTON AND MAXWELL, JJ.

### MAXWELL, J., FOR THE COURT:

¶1.     April Serrano claimed she was injured when the fluorescent light box attached to the kitchen ceiling of her apartment partially fell, causing patches of drywall to land on her. No one disputes the light box and drywall fell. But Laurel Housing Authority, the government entity that managed the apartment complex, hotly contested that it knew or should have known the heavy light box posed a danger of falling.

¶2.     To recover damages, Serrano had to prove Laurel Housing had actual or constructive

notice the light box was a dangerous condition.[1]  And to prevent Laurel Housing from enjoying sovereign immunity under Mississippi Code Annotated section 11-46-9(1)(v) (Rev. 2012), she had to overcome Laurel Housing's claim it had no notice about the danger her light posed before it fell.

¶3.    As this was a bench trial, it was the judge who was tasked with sifting the conflicting testimony about Laurel Housing's notice that the light fixture posed a danger.  And in the end, the judge concluded the testimony that Laurel Housing had no notice was more credible than Serrano's witnesses' claims that it did.  Because there is substantial record evidence supporting this finding of fact, we must defer to it.  We thus affirm the judgment in favor of Laurel Housing based on the immunity provided by section 11-46-9(1)(v).

**Background**

¶4.    After the light box and drywall fell, Serrano sued Laurel Housing for breach of implied warranty of habitability and premises-liability-based negligence.[2]  The circuit judge ordered a bifurcated trial.  The issue of liability would be tried first.  And if Serrano succeeded, her evidence on the extent of her damages would be presented after.

*I.    Evidence at Trial*

---

[1] Serrano neither alleged nor tried to prove that Laurel Housing caused the dangerous condition (i.e., was the one who improperly hung the light box).

[2] Serrano filed suit within the one year, as required by the Mississippi Tort Claims Act (MTCA). *See* Miss. Code Ann. § 11-46-11(3) (Rev. 2012) (providing one year to commence a lawsuit under the MTCA); *see also* Miss. Code Ann. § 11-46-7 (Rev. 2012) (declaring the MTCA to be the exclusive remedy for tort claims against a governmental entity).

¶5.    The evidence presented during the one-day bench trial centered around notice. Serrano argued Laurel Housing knew the light boxes—with their four fluorescent light tubes and ballasts—were too heavy for the spot in the kitchen ceiling where they had been hung. Apparently, all units in Serrano's complex had at some point been renovated. And as part of those renovations, the same type of fluorescent light had been installed in each apartment. Though Serrano conceded that Laurel Housing had not installed the light boxes, Serrano claimed Laurel Housing at some point realized these fixtures were too heavy for the brittle drywall and had been in the process of replacing them.

¶6.    To support her claims, Serrano first called Dexter Scott, ex-maintenance mechanic for Laurel Housing. Scott testified he had worked on the building where Serrano lived and had gone to her apartment after the light box and ceiling fell. According to Scott, other similar fixtures had fallen before, because they were only attached to the drywall, not the ceiling joists. And when those fixtures had fallen, the maintenance staff would replace the light boxes with smaller, lighter fixtures that only used two incandescent bulbs. Scott testified Laurel Housing had known about the problem for at least five years. Scott further testified he had worked on Serrano's apartment before the accident, caulking and painting cracks in her kitchen ceiling.

¶7.    Serrano also called her husband, who was not in the apartment when the ceiling fell, but came by shortly after. Her husband testified he did not see Scott in the apartment that afternoon. But he did talk with L.M. Ducksworth, the maintenance supervisor. And Ducksworth told him the reason the ceiling fell was that the light was too heavy for the

3

drywall and that Laurel Housing was going to swap out the light boxes for smaller fixtures throughout the complex. But her husband admitted Ducksworth never said Laurel Housing had changed out light boxes in the past based on this same problem.

¶8. Ducksworth, who was still the maintenance supervisor at the time of trial, was called as an adverse witness. He testified that he went to Serrano's apartment as soon as he got the call about her ceiling falling. He removed the dangling light fixture completely, as well as the damaged drywall. After he repaired the ceiling, he put up a smaller incandescent fixture, which was easier to install.

¶9. Ducksworth testified he did not remember any other light boxes ever falling before Serrano's. While he had replaced other fluorescent light boxes with smaller fixtures in other units, he denied the replacement was due to their being improperly installed or dangerous. He also flatly denied telling Serrano's husband that, based on other fixtures falling in the past, he knew her fixture fell because it was too heavy.

¶10. Serrano herself testified. She said she had been living in the apartment for five years when the accident occurred. When she first moved in, she noticed cracks in the ceiling, which she reported and which Laurel Housing repaired. Later on, she made a second report about more cracks and sagging drywall. But she admitted she never reported to Laurel Housing that she thought the light box was going to fall.

¶11. Like her husband, she admitted she had not seen Scott come to her apartment after she reported the ceiling falling. But she too spoke to Ducksworth, who explained the reason the light box fell was that it had been improperly hung. Ducksworth also told her Laurel

4

Housing planned to replace all the light boxes in the future.

¶12. The final witness was Ruby Jones, property manager for Laurel Housing. Jones testified there was no paperwork or records documenting any light boxes falling and being replaced before Serrano's fell. Nor did Jones have any recollection of something like that ever happening before.

## II. Conclusion Drawn from Facts

¶13. Because this was a MTCA case, there was no jury. Instead, the trial judge was the fact-finder. *See* Miss. Code Ann. § 11-46-13(1) (Rev. 2012). As such, it was his task to resolve the disputed testimony and any credibility issues. Evidently, he did not find Scott's testimony credible. He concluded Serrano failed to prove Laurel Housing had notice—before Serrano's ceiling fell—that the fluorescent light was a dangerous condition. And because Laurel Housing had no notice, the judge held Laurel Housing was immune from liability under section 11-46-9(1)(v).

¶14. Alternatively, the judge found Laurel Housing enjoyed discretionary-function immunity, based on his conclusion that apartment maintenance was a discretionary function. *See* Miss. Code Ann. § 11-46-9(1)(d).

## Discussion

### I. Trial Judge's Finding of Fact

¶15. On appeal, Serrano claims the judge's finding of fact of no notice was manifestly wrong. She seizes on Scott's testimony, which she argues the trial judge improperly discredited. Serrano suggests that if anyone lacked credibility, it was Ducksworth, whose

status as a current employee gave him more reason to protect his employer. While we understand Serrano's argument, this court is not tasked with engaging in witness-credibility questions or reweighing witness testimony. *Banks v. Lockhart*, 119 So. 3d 370, 373 (¶11) (Miss. Ct. App. 2013) ("Determining the credibility of a witness or the weight of their testimony is not the province of this Court."). Instead, the trial judge "has the sole authority in determining credibility of witnesses when sitting as a trier of fact in a bench trial." *Univ. of Miss. Med. Ctr. v. Pounders*, 970 So. 2d 141, 146 (¶20) (Miss. 2007) (citing *Pride Oil Co. v. Tommy Brooks Oil Co.*, 761 So. 2d 187, 193 (¶18) (Miss. 2000)). Thus, it was the trial judge who "had the prerogative to place whatever weight he chose on [each witness's] testimony." *Id.* The only question this court asks is—After considering the entire record, was there substantial evidence to support the trial judge's findings? *Miss. Dep't of Transp. v. Trosclair*, 851 So. 2d 408, 412-13 (¶10) (Miss. Ct. App. 2003). And here, we find there was.

¶16. Laurel Housing's long-term maintenance supervisor, Ducksworth, and its property manager for almost two decades, Jones, both testified they were not aware of other light boxes falling before Serrano's. While Ducksworth had replaced light boxes in the past, he did not say it was because he knew they were too heavy, improperly installed, or otherwise dangerous.

¶17. Serrano makes much of the fact the fluorescent fixture was not rehung after the ceiling was repaired. She argues the fact a smaller, lighter fixture was put up instead proves Laurel Housing knew *before* her fixture fell that it was too heavy. But as the trial judge pointed out

6

to Serrano's counsel, evidence of a subsequent remedial measure is not admissible to prove negligence or a need to warn. *See* M.R.E. 407. In other words, just because Laurel Housing decided not to rehang the heavy fixture *after* it pulled away from the ceiling does not necessarily prove it somehow had notice *before* the fixture fell that it was too heavy or otherwise posed a danger.

¶18. While it is possible a reasonable fact-finder may have found the opposite—that Laurel Housing did have actual or constructive notice—the finding the trial judge made after considering the competing evidence—that Laurel Housing had *no* notice—was not "manifestly wrong." *Trosclair*, 851 So. 2d at 413 (¶10). Because this finding of fact was based on substantial evidence, we leave this finding undisturbed on appeal. *See id.*

## II. *Immunity Under Section 11-46-9(1)(d)*

¶19. Because Laurel Housing lacked actual or constructive notice of the dangerous condition, it was immune under section 11-46-9(1)(v). This provision reinstates sovereign immunity for tort claims:

> Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against[.]

Miss. Code Ann. § 11-46-9(1)(v). Serrano's claim arose out of an alleged injury caused by a dangerous condition in her government-managed apartment. So under this provision, Laurel Housing cannot be held liable if it neither caused nor had notice of the dangerous condition.

7

¶20.    As Serrano states in her brief, she "did not attempt to prove that [Laurel Housing] actually created the dangerous condition[.]"  So this first requirement for immunity under subsection (v) is not in dispute.  And as discussed above, the trial judge found Serrano failed to prove Laurel Housing had actual or constructive notice of the condition.[3]  *See Hodges v.*

[3] Even if Laurel Housing were a private apartment complex, Serrano still would have lost at trial based on the fact-based conclusion that Laurel Housing lacked notice of the dangerous condition.

Serrano had two theories of liability—(1) Laurel Housing breached its implied warranty of habitability, and (2) Laurel Housing breached its duty to her, as an invitee on its property, to keep the premises reasonably safe and, when not reasonably safe, to warn her about any dangerous condition.  Both of the theories required Serrano to prove Laurel Housing knew about the dangerous condition of the light box.

Under the implied warranty of habitability, Laurel Housing had a duty "to provide a reasonably safe premises at the inception of a lease, and to exercise reasonable care to repair dangerous defective conditions *upon notice of their existence by the tenant*."  *Dulin v. Sowell*, 919 So. 2d 1010, 1012 (¶5) (Miss. Ct. App. 2005) (emphasis added) (quoting *O'Cain v. Harvey Freeman and Sons, Inc. of Miss.*, 603 So. 2d 824, 833 (Miss. 1991) (Sullivan, J. concurring)).  So Laurel Housing's duty to repair the dangerous condition was qualified by ***Serrrano's*** "duty to provide notice to . . . her landlord" of the dangerous defective condition in need of repair.  *Id.* at 1013 (¶6).  As part of his opinion, the trial judge found Serrano "never put the Laurel Housing Authority on notice of any alleged dangerous condition during her time as a resident in the apartment at issue[.]"  This finding was supported by Serrano's own admission on the witness stand.  Thus, Serrano failed to prove her implied-warranty-of-habitability claim.

Under premises-liability law, Laurel Housing owed Serrano, a business invitee, the duty "to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or to warn of dangerous conditions not readily apparent, *which the owner knows of, or should know of*, in the exercise of reasonable care."  *McCullar v. Boyd Tunica, Inc.*, 50 So. 3d 1009, 1012 (¶12) (Miss. Ct. App. 2010) (emphasis added).  So to prove her claim that Laurel Housing breached this duty, Serrano had to show: (1) Laurel Housing's negligent act caused the dangerous condition, or (2) Laurel Housing had ***actual knowledge*** of the dangerous condition but failed to protect or warn Serrano, or (3) the dangerous condition remained long enough to provide Laurel Housing with ***constructive knowledge***.  *Id.* at 1013 (¶13).  As Serrano never claimed Laurel Housing negligently installed the light box, once again Laurel Housing's knowledge is key.  Serrano had to prove Laurel Housing knew or should have known about the dangerous condition posed by the light box but failed to act.

*Madison Cnty. Med. Ctr.*, 929 So. 2d 381, 384 (¶10) (Miss. Ct. App. 2006) (listing the plaintiff's proof that government entity had actual or constructive notice of the dangerous condition as one way to "defeat" the defense of sovereign immunity). Therefore, Laurel Housing also met the second requirement for immunity under subsection (v), meaning it could not be held liable for Serrano's claim.

### III. No Immunity Under Section 11-46-9(1)(d)

¶21. The application of one exception to the general waiver of sovereign immunity is sufficient for Laurel Housing to be immune. *Fair v. Town of Friars Point*, 930 So. 2d 467, 471 (¶9) (Miss. Ct. App. 2006). But since the judge also found Laurel Housing enjoyed discretionary-function immunity, it is worth noting why this determination is now error, based on *Little v. Mississippi Transportation Commission,* 129 So. 3d 132, 137-38 (¶¶10-11) (Miss. 2013). In that case, the Mississippi Supreme Court expressly overruled its line of previous cases that had held that, "while a certain act may be mandated by statute, how that act is performed can be a matter of discretion." *Id.* at 137 (¶10). Instead, "where a statute mandates the government or its employees to act, all acts fulfilling that duty are considered mandated as well, and neither the government nor its employees enjoys immunity." *Id.* at 138 (¶10).

¶22. One of the reasons our Legislature created housing authorities and empowered them to manage housing projects was to "provid[e] . . . safe and sanitary dwelling accommodations

---

And because the trial judge found Serrano failed to prove Laurel Housing had the requisite knowledge, even without MTCA immunity, her premises-liability claim still fails.

9

for persons of low income[.]" Miss. Code Ann. § 43-33-3 (Rev. 2009). Built into the Legislative definition of a "housing project" is that it is a "work or undertaking . . . to provide decent, *safe* and sanitary urban or rural dwellings, apartments, or other living accommodations for persons of low income[.]" Miss. Code Ann. § 43-33-1(j) (Rev. 2009) (emphasis added). So Laurel Housing's duty to provide safe apartments for its low-income residents is clearly mandated by the Legislature.

¶23. This means, following *Little*'s logic, "all acts in furtherance of that [mandated] duty . . . are ministerial unless . . . another statute makes a particular act discretionary." *Little*, 129 So. 3d at 138 (¶11). Because any act of maintaining or repairing the apartments—or failing to maintain or repair—fell under Laurel Housing's duty to provide its residents a safe dwelling, it cannot be said the decision to not repair or replace a light fixture was the exercise of a discretionary function.

¶24. In the trial judge's defense, his final judgment was entered several weeks before *Little*, and he was not asked to revisit his decision in light of the supreme court's change of the law. Still, his determination that apartment maintenance was an exercise of a discretionary function is now erroneous based on that case.

¶25. **THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**