GARDINER *v.* GARDINER

No. 40433 March 25, 1957 93 So. 2d 638

*M. M. Roberts,* Hattiesburg; *Lampkin Butts,* Laurel, for appellant and cross-appellee.

*Welch, Gibbes & Graves, Dorothy B. Clower,* Laurel, for appellee and cross-appellant.

**Kyle, J.**

This case is before us on appeal by Jane Garrison Gardiner from a decree of the Chancery Court of the Second Judicial District of Jones County against her husband J. Lyon Gardiner awarding to her separate maintenance in the sum of $250 per month, and dismissing with prejudice the cross bill for divorce filed by the appellee, J. Lyon Gardiner. The appellee has also filed a cross-assignment of errors which will be referred to later.

The record shows that the appellant was 57 years of age at the time of the trial in the lower court; the appellee was 60 years of age. The parties were married in the City of Laurel on February 6, 1946, and lived together as husband and wife until December 13, 1955. Each of the parties had been married before. The wife had two adult children by her prior marriage; and the husband had one adult child by a prior marriage. There were no children of the present marriage.

The record shows that the appellant was first married in 1922. That marriage was terminated by a divorce granted to the wife in 1927. The appellant came to Laurel in 1943, and at the time of her marriage to the appellee was engaged in the business of purchasing oil, gas and mineral leases for lease brokers on a commission basis. The appellant at that time had on hand three or four thousand dollars in cash; she owned her household furniture and an automobile; and had acquired mineral interests from which she derived an income of approximately $1,000 per year. She became acquainted with the appellee sometime during the month of November 1945, and they were married on February 6, 1946.

At the time of the marriage the appellee had no business, profession or employment. He lived with his parents and depended upon gifts of money and capital assets for his livelihood. He had accumulated a "few thousand dollars" in a bank account, and owned a 20-acre tract of land in the Country Club Hills section of Laurel. The appellant testified that it was her understanding at the time of the marriage that she was not to be the bread winner, that it was their idea that they would live on capital.—"That is what he told me before we were married." The appellant testified that her husband had "no earning capacity," that he could not hold a job, "that his father was always giving him money." She said, "We lived on capital * * * selling

off capital that we had.'' The appellee testified that he had had no earnings from his own individual efforts since his marriage to the appellant.

Soon after the marriage the couple had constructed a dwelling house on the land owned by the appellee in the Country Club Hills section. Construction costs were paid through outright gifts to the couple by the appellee's parents. They moved into the dwelling house after it was completed, and occupied the same as a home until their separation on December 13, 1955. The home was valued at the time of the hearing at $35,000 or $40,000. In 1948 the appellee's mother died and he received a substantial amount of property under her will. He owned at the time of the hearing in 1956 common stocks listed on the New York exchange of the value of approximately $90,000. In 1953 the appellant inherited from her deceased sister property of the value of approximately $10,000. Some of this money she spent in buying additional furniture and equipment for the home and in air conditioning the home. She let her husband have $1,000 of the money that she had received from her sister's estate.

It appears from a reading of the record that the marriage arrangement between the parties worked very well during the first three or four years, but after that their relations with each other became somewhat strained, and long before their final separation the parties occupied separate apartments in the house. On December 13, 1955, the appellee left the home and went to live with his father, who was also living in the City of Laurel, and on December 20, 1955, the appellant filed her bill for separate maintenance.

The appellant alleged in her bill that the appellee had left the home without cause or justification, and that he had failed and refused to provide funds for her separate support, and that she was in dire need for the

necessities of life. She alleged in her bill that the appellee had been unfaithful to his marital vows; that he was addicted to strong drink; and that he had revolting habits. The appellant alleged that the appellee was a man of independent wealth, and that he was engaged in disposing of his property in order to defraud her of her right to proper support and maintenance out of his estate; and the appellant asked that the court grant her a decree for separate maintenance, and that she be awarded the possession of the home, and also suit money. In a separate petition the appellant asked that a restraining order be issued, forbidding the appellee from withdrawing funds from the First National Bank of Laurel pending the final hearing of the cause, and that he be restrained from entering or permitting anyone else to enter his safety deposit box in said bank. The chancellor issued a restraining order immediately enjoining the appellee from entering or having any other person enter his safety deposit box until further order of the court.

The appellee filed an answer to the appellant's bill, and in his answer denied that he had refused to provide for the appellant since the separation. The appellee averred the truth to be that he had provided for her support and maintenance since the date of their separation, and he denied that she was entitled to separate maintenance, or that he had been unfaithful to his marital vows. After the filing of his answer the appellee obtained permission from the court to file a cross bill for divorce. The appellee then filed a cross bill for a divorce in which he alleged habitual cruel and inhuman treatment as grounds for divorce.

The cause was heard upon its merits at the regular August 1956 term of the court, and in its final decree the court ordered that the appellee pay to the appellant for her separate maintenance the sum of $250 per month,

and that the appellant have the exclusive use and occupancy of the marital domicile in the City of Laurel, together with the house hold furnishings and effects, and that the appellee maintain insurance on the property and pay the taxes thereon. The appellant was also given the exclusive use of a Chevrolet automobile which was then in her possession, and was allowed an additional sum of $550 as solicitor's fee to be paid to her solicitor, which should be in addition to a $450 fee theretofore allowed. The court dissolved the injunction entered in the cause on December 20, 1955, and ordered that the appellee place in the registry of the court 100 shares of common stock of The American Telephone and Telegraph Company, which he owned at the time the decree was entered, as security for the payment of the sums ordered to be paid to the appellant, but reserving to the appellee the right to receive the dividends paid thereon. The court dismissed the appellee's cross bill with prejudice.

The appellant has assigned as errors on this appeal the following: (1) That the court erred in limiting monthly alimony to $250 per month; (2) that the court erred in dissolving the temporary injunction and releasing the security therein provided for payment of the sums otherwise decreed to be paid, without making adequate provision for other security; (3) that the court erred in not requiring the appellee to repay the appellant the sum of $1150 of the appellant's money in the hands of the appellee.

The appellee has also filed a cross-assignment of errors, as follows: (1) That the court erred in fixing the amount of $250 and other benefits for the support and maintenance of the appellant; (2) that the court erred in requiring the appellee and cross-appellant to post with the clerk of the court the 100 shares of common stock of The American Telephone and Telegraph Company, own-

ed solely by him, as security for the payment of the amounts adjudged to be paid to the appellant; and (3) that the court erred in requiring the appellee to repay loans made by the appellant during the litigation, and for other payments for the account of the appellant.

We have carefully examined each of the assignments of error argued on both direct and cross appeals, and in our opinion there is no substantial merit in any of them. The appellant under the facts disclosed by the record was entitled to a decree for separate maintenance; but we think it cannot be said that the amount allowed by the chancellor was either insufficient or excessive.

The jurisdiction of the chancery court to make an allowance to a wife living apart from her husband for her separate maintenance is to be exercised according to equitable principles, and the amount to be allowed in any case in which such allowance may be properly made must be determined according to the facts disclosed by the record in that particular case, and is largely within the discretion of the trial judge. This Court will not undertake to substitute its judgment in such case for that of the chancellor unless it clearly appears that the chancellor has abused his discretion or has failed to apply correctly the equitable principles which govern in such cases. The chancellor had a right to dissolve the temporary injunction and to require the appellee to deposit in the registry of the court specific securities, to insure the payment of all sums ordered to be paid to the appellant, and to affix a lien upon those securities for the payment of such sums; and if necessary the chancellor may later order the stocks sold for the payment of the amounts due, or make such other orders as may be necessary to protect the rights of the wife.

We find no merit in the contention of either of the parties in support of assignment No. 3 on the direct appeal and assignment No. 3 on cross appeal.

 The appellant has asked for the allowance of an additional attorney's fee to be paid to her attorneys for legal services rendered on this appeal. No allowance will be made to her for such attorney's fee for legal services rendered on the direct appeal, but the sum of $250 will be awarded to her for legal services rendered by her attorneys on the cross appeal, said amount to be paid within sixty days after the filing of the mandate in the lower court.

The decree of the lower court is affirmed on direct appeal and on cross appeal.

Affirmed on direct appeal and on cross-appeal.

*Roberds P. J.*, and *Arrington, Ethridge* and *Gillespie*, JJ., concur.

## ON MOTION FOR ALIMONY PENDENTE LITE AND ATTORNEY'S FEE.

McGehee, C. J.

The above mentioned motion for alimony pendente lite and an attorney's fee was filed by the appellant in this Court on October 30, 1956, but opposing counsel was served with a copy thereof on October 29, 1956. The appellant has submitted a brief in support of her motion to be allowed alimony pending this appeal and for attorney's fee in this Court. No reply brief has been filed by the appellee but the motion was argued orally before the Court by one of the attorneys for the appellant and by one of the attorneys for the appellee.

It is thought that the case on its merits may not be reached on the docket for submission and decision prior to March or April of 1957. The cause was instituted by the appellant as a suit solely for separate maintenance in December 1955. The appellee appeared and filed an answer to the bill of complaint and a cross bill seeking a divorce.

On April 19, 1956, at a regular term of the chancery court in Jones County the trial court entered an order, after a hearing, granting unto the appellant the exclusive occupancy of the matrimonial domicile at Laurel during the pendency of the litigation, requiring the taxes and insurance to be maintained on the home property by the appellee, and also requiring that he pay all utility bills at the home, including lights, gas, water and telephone bills, with the exception of long distance calls, and requiring that the appellee pay the sum of $215.00 per month for one-half of the month of April, and the full months of May, June and July, 1956, together with a partial attorney's fee of $450.00.

The cause was heard on its merits at the August 1956 term of the court, and a final decree was entered on September 15, 1956, granting the appellant separate maintenance in the sum of $250.00 per month instead of the $215.00 per month for the period hereinbefore mentioned which expired prior to the hearing on the merits.

On the final hearing the cross bill of the appellee was dismissed, no evidence having been offered in support of the said cross bill. The final decree of September 15, 1956, likewise granted unto the appellant exclusive use and occupancy of the residence, including the house and the 15 acre home site, all estimated to be worth $35,000.-00, also all of the furniture and household effects, the exclusive use of a Chevrolet automobile then in her possession, and required the appellee to maintain insurance and pay the taxes on the residence property, but did not require that he continue paying the utility bills at the home, including water, lights, gas and telephone. In that decree the appellee was required to pay unto the appellant a further sum of $550.00 as an attorney's fee in the chancery court, and that he pay the costs of the court.

The record made at the hearing of the case on its merits discloses that the appellee had assets at least of the value of $130,000.00, but the proof clearly discloses that the appellee had undervalued some of his assets, for instance two items which he claimed to be of the value of $300.00 each, he frankly stated on cross examination that would not be willing to take $600.00 or even $1,500.00 for either of the two items of property; that he did not want to sell them. At any rate, it is fair to assume that his estate was worth between $130,000.00 and $150,000.-00, practically all of which he had inherited from his mother and with the remainder given to him by his father.

Both the appellant and the appellee testified that he had never been gainfully employed but that they had always lived off of his capital and the income therefrom. The proof showed that he left home and did not provide his wife with funds for her support and maintenance, except by meeting the requirements of the decree of April 19, 1956.

The proof further discloses that the appellant and appellee had expended prior to their separation approximately $800.00 or $900.00 per month to maintain their then standard of living, but he testified that it had been as low as $600.00 per month during the time they were living together. She itemized the sums that would be required to properly maintain her in keeping the maid that had been theretofore employed by them, and in keeping up the house and defraying her other living expenses, and she testified this amount would exceed $400.00 per month.

The appellant is now nearly 58 years of age, and prior to her marriage to the appellee about ten years ago she had sold oil and gas leases but that she does not now have employment or income from any source, except an

income of about $100.00 per month from certain mineral rights acquired by her.

Feeling aggrieved at the allowance to her of $250.00 per month for separate maintenance under the final decree she perfected an appeal to this court to get a review of the record as to the adequacy of this allowance. Her appeal was taken with supersedeas and the appellee has not paid her anything since July 1, 1956.

Upon perfecting her appeal she applied to the trial court to allow her alimony pendente lite and an attorney's fee with which to prosecute her appeal. The trial court denied this application on the ground that the appeal conferred upon the Supreme Court the exclusive jurisdiction for the allowance of support money pending the appeal and for an attorney's fee therefor.

The final decree dissolved an injunction theretofore issued which prevented the appellee from going into his lockbox at the bank or further disposing of his assets pending the outcome of this appeal, but the court required that the defendant should place "in the registry of this court 100 shares of the common stock of the American Telephone and Telegraph Company as security for the payment of all sums herein ordered to be paid, but reserving to the defendant (the appellee here) the right to receive any dividends paid thereon."

We assume that the reason for the appellant having taken this appeal with supersedeas was to avoid any prejudice to her rights to have the decree of September 15, 1956, modified by this Court so as to increase the allowance of $250.00 per month for her separate maintenance.

██ █ At any rate, we are of the opinion that this Court has the inherent power to order that the appellee shall meet the payments which are now in arrears and to continue to pay the $250.00 per month until the final disposition of the cause in this court, but with the right

to have the sum so paid applied as a credit on such sums as this Court may determine her to be entitled to on the hearing of this cause on its merits. At that time this Court would have the right to render such decree as it may find that the trial court should have rendered as of September 15, 1956, and relate the judgment here back to that date. In the event this Court should determine that the decree of September 15, 1956, should be affirmed, then the appellee would be entitled to credit for such sums as he is ordered to pay in the judgment on this motion in full or partial satisfaction, as the case may be, of the $250.00 per month award made by the trial court for the separate maintenance of the appellant.

But in the event this Court should hold when it decides this cause on its merits that the trial court should have allowed more than $250.00 per month, and should fix a larger sum for her support and maintenance, the increased allowance would relate back to the renditon of the decree of September 15, 1956, and the defendant would be required to pay the difference between the amount that he may have paid under the judgment to be entered on this motion and the amounts to which the monthly payments may be then increased.

We are of the further opinion that the matter of the allowance of an attorney's fee to the appellant on this appeal should be continued to and determined along with the determination of the appeal on its merits.

A judgment will be entered accordingly.

Motion sustained in part and continued in part.

*Hall, Lee, Kyle* and *Holmes,* JJ., concur.