829 So.2d 712 (2002)
Robert K. DAVIS, Appellant
v.
Linda K. DAVIS (DOOLEY), Appellee.
No. 2001-CA-01773-COA.
Court of Appeals of Mississippi.
October 29, 2002.
E. Foley Ranson, Ocean Springs, for appellant.
*713 James B. Wright, Gulfport, for appellee.
Before SOUTHWICK, P.J., THOMAS and CHANDLER, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Robert K. Davis was held in civil contempt by the Chancery Court of Jackson County for failure to pay debts assigned to him in a prior divorce decree. Davis appeals, arguing that the judgment was too vague to support a finding of contempt. Davis further argues that the chancellor failed to comply with a procedural rule when he dictated his findings of fact and conclusions of law into the record. These arguments lack merit. Accordingly, we affirm.

STATEMENT OF FACTS
¶ 2. Robert K. Davis and Linda Dooley were divorced in July 1997, ending a marriage of barely a year. In the final judgment of the lower court, the chancellor held that Ms. Dooley would be assessed "all obligations owed by the parties, except the three debts set forth in the Opinion of the Court, i.e., the debts to the United States for goods obtained by Linda K. Davis at the base exchange and the shipping expense overage, respectively and the deficiency to GMAC." Davis did not satisfy these claims and denies that the language in the divorce judgment explicitly required that he make the payments. We will review the argument on that below.
¶ 3. Following the divorce, Davis convinced the military that he was not responsible for the goods obtained from the exchange and should be exonerated from the liability. Subsequently, the Internal Revenue Service attached Ms. Dooley's federal tax refund in the amount of $3,729.59 in payment for the outstanding federal debt. Dooley in turn petitioned the chancellor to have Davis held in contempt for causing her to have to pay the amount. The court granted the petition, additionally awarding attorney's fees and court costs. We now turn to Davis's appeal.

DISCUSSION

1. Contempt

¶ 4. Davis submits that because the judgment did not expressly order him to pay the Army & Air Force Exchange Service debt, it was insufficient to support a finding of contempt. Davis also argues that he did not willfully disobey the chancellor's order.
¶ 5. Davis states that the judgment language "merely points out by way of information" his liability for the debt at the time of the divorce decree. We find this explanation disingenuous. The statements about the debt appear in two documents. Already quoted was language from the final judgment of divorce, dated July 14, 1997. The structure of that judgment is this:
First paragraph: Court has jurisdiction.
Second paragraph: Date of marriage and separation, and there are no children.
Third paragraph: Parties agreed to irreconcilable differences divorce.
Fourth Paragraph: Alimony to be paid by Davis to Ms. Dooley for 18 months.
Fifth Paragraph: This is the formerly quoted provision that Linda Davis Dooley is to be responsible for all debts except for the three obligations at the base exchange and for shipping expense overage.
Sixth paragraph: Division of personal property.
Seventh paragraph: Restoring former wife's name to Linda Dooley.
¶ 6. In sum, Davis's argument is that since the judgment only stated that his ex-wife *714 was not liable and never clearly said that he was, there is an ambiguity. However, this was a judgment that resolved the rights and liabilities of only two people, Davis and Dooley. The debts were the debts that either individually or jointly had been incurred and needed to be assigned at the time of divorce. Davis's argument that he did not understand that the quoted language was allocating the responsibility of paying the debts to him is not a reasonable interpretation of the judgment. Who was to pay if not Davis? Ms. Dooley had all other debts except for these three. Was the chancellor giving the remaining three to the next-door neighbor? There simply was no other interpretation in the context of the judgment except that the former husband was to pay them.
¶ 7. There is another source that provides context. A separate opinion of the chancellor issued on June 9, 1997, about a month before the judgment, also discussed the debts. It described the three debts that a month later the judgment held would not be Linda Dooley's responsibility. The opinion explains that "the Husband is presently liable" for those three debts even though the description in the opinion indicated that Ms. Dooley had caused the debts to be incurred. This paragraph of the chancellor's opinion is addressing Ms. Dooley's claim that her ex-husband owed her $25,000 for loss of certain exotic birds. The chancellor wrote that any claim of that sort "would be far offset by the fact" that Mr. Davis was liable for these three debts totaling about $14,000, and by Ms. Dooley's receipt of almost $20,000 from him.
¶ 8. We find that the only possible interpretation of either the opinion or the judgment is that the chancellor recognized that Ms. Dooley had caused the debts to be incurred, but as part of resolving the financial aspects of divorce, Mr. Davis would pay them. Perhaps he could negotiate with the creditors or make other arrangements with them, but it was for Davis to satisfy those claims.
¶ 9. Before a party may be held in contempt for failure to comply with a judgment, "the judgment must be complete within itself ... leaving open no matter or description or designation out of which contention may arise as to meaning." Wing v. Wing, 549 So.2d 944, 947 (Miss.1989). We cannot agree with Davis that "an ordinary person reading the Final Judgment of Divorce would not be informed that [Davis] was ordered to pay the United States for the AAFES debt." Factual findings in a contempt matter are largely within the discretion of the trial court. Premeaux v. Smith, 569 So.2d 681, 683 (Miss.1990). Here, the lower court made an eminently reasonable ruling that the divorce judgment held Davis liable for the AAFES debt.
¶ 10. What is explicitly stated in the judgment is that Ms. Dooley was not liable for those debts even though she caused them to be incurred. Ms. Dooley's exoneration from liability was an undeniable feature of the judgment: "Linda K. Davis shall be responsible for all obligations of the parties, except the three debts set forth in the Opinion of the Court" which the court then summarized in the judgment. Davis argues that contempt cannot be based on a violation of this judgment because it is ambiguous. His ambiguity argument focuses solely on the absence of explicit language that says "Davis will pay." We have not accepted that argument, but regardless, what is not in any form ambiguous is that Ms. Dooley was not to be liable for those debts. The wilful violation of the judgment from that perspective is beyond question. Following the entry of the judgment, Davis sought to undermine the balance struck by the chancellor by convincing AAFES to absolve *715 him and pursue collection from Ms. Dooley. The judgment was explicit that Ms. Dooley was not responsible, yet Davis immediately and wilfully set about convincing the creditors that she was.

2. Findings of fact and conclusions of law

¶ 11. Mr. Davis argues that in the contempt matter, the chancellor did not enter adequate findings of fact and conclusions of law. Upon request, a judge after a bench trial must enter findings of fact and conclusions of law if they are timely requested by one of the parties.
In all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly.
M.R.C.P. Rule 52(a). The chancellor responded to the request after the contempt hearing by recessing the court, then returning to the bench to dictate for the court reporter an oral opinion that contained findings of fact and conclusions of law.
¶ 12. Davis argues that compliance with Rule 52 requires a separate writing by the court. The purpose of the Rule is to obtain a detailed explanation of a bench trial result when requested. It does not matter that the court dictated one in open court for the court reporter to transcribe, or dictated one while in chambers for a secretary to type. It is the content that matters, not the place at which the judge is sitting when expressing his reasoning.
¶ 13. The Supreme Court described the purpose of the antecedent to Rule 52(a) when that statute, whose operative language was nearly identical to that in the rule, had been only "recently unveiled:"
The purpose of this statute was to prevent the concealment, in a general decree, of the grounds upon which the trial court proceeded to its final conclusion, leaving the appellate court without record information, necessary to justice in many cases, as to whether the final decision rested upon conclusions of law or upon findings of fact leading to the same conclusion, with the result that cases were often affirmed upon the presumption by the appellate court that the trial court had arrived at a conclusion upon the facts which would support the decree, when, in truth, the conclusion of the trial judge was to the opposite as to the facts, but his conclusions of law, as applied to the facts actually found by him, were erroneous.
General Tire & Rubber Co. v. Cooper, 176 Miss. 491, 165 So. 420, 421 (1936), describing 1934 Miss. Laws ch. 252, later codified as Miss.Code Ann. § 11-5-87 (repealed by 1991 Miss. Laws ch. 573, § 141).
¶ 14. The Court explicitly heldno implication of any sort requiredthat a statement must be made "in the court reporter's transcript, and preferably so, or else in longhand written out and filed in the case, [of] the ultimate facts upon each contested or litigated point of fact, separately from the conclusions of law, and thereupon his conclusions of law in such manner that the conclusions of fact and of law may be distinguished." General Tire, 165 So. at 422. Technology has altered the preferable choices from those stated in the quotation. Still, we find no reason to denigrate findings and conclusions that are prepared in this manner.
¶ 15. The substance of the findings and conclusions complied with the rule. Lowery v. Lowery, 657 So.2d 817, 819 (Miss. 1995) ("general findings and conclusions are sufficient").
*716 ¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST AWARDED TO APPELLEE. ALL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.