975 So.2d 899 (2008)
Marina Y. Asanov HUNT, Appellant
v.
Alexander N. ASANOV, Appellee.
No. 2007-CA-00192-COA.
Court of Appeals of Mississippi.
February 26, 2008.
*900 Dewitt T. Hicks, Jr., Columbus, attorney for appellant.
Alexander N. Asanov, appellee, pro se.
Before MYERS, P.J., IRVING and ISHEE, JJ.
MYERS, P.J., for the Court.
¶ 1. Marina Y. Asanov Hunt (Hunt) appeals the decision of the Chancery Court of Oktibbeha County, arguing that the chancery court erred in (1) reducing the child support obligations of Dr. Alexander N. Asanov (Dr. Asanov), (2) failing to hold Dr. Asanov in contempt for failure to pay back child support, and (3) distributing certain marital property. Hunt seeks a reversal of the chancery court's judgment and a judgment rendered ordering Dr. Asanov to pay delinquent child support and awarding her fifty percent or more ownership interest in the parties' company. Finding no error in the judgment of the chancery court, we affirm.[1]

UNDERLYING FACTS AND PROCEDURAL HISTORY
¶ 2. This Court has reviewed this case once before. See Asanov v. Hunt, 914 So.2d 769 (Miss.Ct.App.2005).[2] There, Dr. Asanov appealed issues concerning the validity of the parties' foreign divorce decree, the failure to hold Hunt in contempt, the division of marital property, and child custody. Hunt cross-appealed, seeking a determination on child support. Hunt additionally sought a ruling from this Court imposing sanctions upon Dr. Asanov for filing a frivolous appeal. We affirmed the chancellor's: (1) recognition of the parties' Russian divorce decree, (2) declination to hold Hunt in contempt, (3) dismissal of Dr. Asanov's attempt to divide the marital property, and (4) grant of sole physical and *901 legal child custody. However, we found that there was no judgment regarding child support and dismissed this point of Hunt's cross-appeal as not being properly before the Court. Further, we declined to impose sanctions on Dr. Asanov, finding that his appeal was not frivolous.
¶ 3. Since the final decision entered by this Court, the parties have returned to the chancery court seeking adjudication regarding child support, contempt, and equitable division of a company owned by the parties. The chancery court found that Dr. Asanov did not owe an arrearage in his child support obligations and declined to hold Dr. Asanov in contempt. The parties' company, BioElectroSpec, Inc., was divided by the chancellor, granting Hunt a twenty-five percent interest and presenting Dr. Asanov the option of purchasing Hunt's interest for a specified amount.

DISCUSSION
I. WHETHER THE CHANCELLOR ERRED IN FAILING TO FIND THAT DR. ASANOV OWED DELINQUENT CHILD SUPPORT AND DECLINING TO HOLD DR. ASANOV IN CONTEMPT FOR FAILURE TO PAY CHILD SUPPORT OBLIGATIONS.
¶ 4. Under the initial Russian child support order dated June 24, 2000, Dr. Asanov was obligated to pay one-third of any income received. On February 13, 2001, Hunt sought to enroll and enforce the Russian child support order in the Chancery Court of Oktibbeha County. However, the chancery court instead issued a bench opinion on November 27, 2001, obligating Dr. Asanov to pay $625 per month in child support for the parties' two minor children. This support order was to become effective on December 1, 2001. But then a few days later, on December 6, 2001, the chancery court issued an order nunc pro tunc recognizing and enrolling the initial Russian child support order. No issue was made on appeal of the orders, and Dr. Asanov began paying $625 per month for child support. On March 11, 2002, upon Dr. Asanov's motion, his child support obligations were modified; and Dr. Asanov again was ordered to pay $625 per month.
¶ 5. In 2004, the parties returned to the chancery court regarding several different matters, including a motion filed by Hunt seeking to have Dr. Asanov held in contempt for failure to pay his child support obligations as outlined in the Russian child support order. At that time, the chancery court refused to rule on Hunt's motion of contempt. The issue of child support was later cross-appealed by Hunt; however, this Court refused to consider the issue for lack of a final judgment. Asanov, 914 So.2d at 774(¶ 28).
¶ 6. After we handed down our opinion in the first appeal of this matter in 2005, the parties then returned to the chancery court seeking final adjudication on the issue of child support. Hunt sought a determination of the amount Dr. Asanov owed in delinquent child support according to the Russian child support order and sought to have Dr. Asanov held in contempt for failure to pay his obligation. However, the chancellor found that Dr. Asanov paid, and actually overpaid, his owed child support in accordance with the chancery court order of $625 per month. Finding that Dr. Asanov had properly paid the amounts owed for child support, the chancellor denied Hunt's motion to hold Dr. Asanov in contempt.
¶ 7. Hunt argues that while the chancellor found that Dr. Asanov fully paid his child support obligations in the amount of $16,250, under the Russian decree Dr. Asanov should have paid approximately *902 $70,000 in child support. Hunt asserts that the chancellor's departure from the Russian child support order was an erroneous downward modification of Dr. Asanov's child support obligations. Hunt also argues that the chancellor's decision was inappropriate under the clean hands doctrine because Dr. Asanov was in arrearage under the original Russian child support order when he sought relief. She argues that because the chancery court erroneously modified Dr. Asanov's child support obligations, she is entitled to back child support and her attorney's fees incurred in bringing her motion for contempt.
¶ 8. The law of Mississippi is well settled that the clean hands doctrine prevents a parent from receiving a modification of a child support order when that parent is guilty of willful contempt of the order mandating the support. Bailey v. Bailey, 724 So.2d 335, 337(¶ 6) (Miss.1998) (citing Calcote v. Calcote, 583 So.2d 197, 199-200 (Miss.1991)). Most important to our consideration of whether Dr. Asanov was in contempt centers upon determining whether his violation of the order was "willful" so as to preclude relief in his child support obligations.
¶ 9. Contempt matters are committed to the substantial discretion of the chancellor. Lahmann v. Hallmon, 722 So.2d 614, 620(¶ 19) (Miss.1998) (citing Shelton v. Shelton, 653 So.2d 283, 286 (Miss.1995)). In a contempt action for failure to pay child support, the party seeking the support makes a prima facie case by introducing evidence that the party required to pay the support has failed to do so. Lahmann, 722 So.2d at 620(¶ 19) (citing Guthrie v. Guthrie, 537 So.2d 886, 888 (Miss.1989)). At this point, the burden shifts to the paying party to show an inability to pay or other defense. Lahmann, 722 So.2d at 620(¶ 19). One may defend a contempt proceeding with the defense that the court order was unclear. Ellis v. Ellis, 840 So.2d 806, 811(¶ 18) (Miss.Ct.App. 2003) (citing Davis v. Davis, 829 So.2d 712, 714(¶ 9) (Miss.Ct.App.2002)). It follows that if the order was unclear, then Dr. Asanov cannot be held in willful contempt for failure to comply.
¶ 10. Our review in this case finds that Dr. Asanov's failure to pay under the Russian child support order cannot be characterized as contumacious. Within a period of approximately one week, two separate child support orders were issued by the chancery court. One order was issued enrolling the Russian child support order nunc pro tunc, but it failed to specify a dollar amount owed. The other order specified a dollar amount owed and a date when the payments should commence. When the parties sought a clarification or reconciliation of these two orders, the chancery court refused to rule. Both Hunt and Dr. Asanov were then left to guess which order controlled the child support obligations of Dr. Asanov.
¶ 11. Before a party may be held in contempt for failure to comply with a judgment, "`the judgment must be complete within itself . . . leaving open no matter or description or designation out of which contention may arise as to meaning.'" Davis, 829 So.2d at 714(¶ 9) (quoting Wing v. Wing, 549 So.2d 944, 947 (Miss.1989)). When Dr. Asanov began paying monthly child support payments of $625, which was the amount ordered under the first child support decree, he continued to pay this amount and no appeal was taken. It is entirely reasonable to infer that Dr. Asanov was under the impression that he was in compliance with the court order of child support. Finding such, we cannot find that Dr. Asanov's conduct was sufficiently knowing so that it should be labeled contumacious, as he did not commit a willful or deliberate violation of the *903 prior judgments or decrees. Therefore, Dr. Asanov did not come into the chancery court seeking a downward modification of his child support obligations with unclean hands. We find Hunt's issues on this matter to be without merit and decline relief thereon.
II. WHETHER THE CHANCELLOR ERRED IN DISTRIBUTING CERTAIN MARITAL PROPERTY, NAMELY A CORPORATION OWNED BY THE PARTIES.
¶ 12. In the order adjudicating the parties' marital property division, the chancellor found that BioElectroSpec, Inc., was an asset acquired during the marriage; thus, it became marital property subject to equitable division. The Ferguson factors were applied, and the chancellor presented Dr. Asanov the option of either formally transferring to Hunt a twenty-five percent interest in the parties' corporation or purchase Hunt's twenty-five percent interest for $12,500. Dr. Asanov was instructed by the chancellor to choose either option within thirty days of the date of the order and was encouraged to select the latter option to eliminate possible future discord with Hunt. Hunt asserts that, to this day, Dr. Asanov has failed to comply with the order and has failed to either formally transfer an interest in the corporation to her or to purchase her interest for the specified amount. Hunt further asserts that the chancellor committed manifest error in analyzing the Ferguson factors and making the distribution of BioElectroSpec, arguing that she should have been awarded a distribution of at least fifty percent of the corporation. On appeal she seeks the reversal of the property division and an award rendered in her favor for a fifty percent interest in BioElectroSpec.[3]
¶ 13. The "`chancery court has authority, where equity demands, to order a fair division of property accumulated through the joint contributions and efforts of the parties.'" Owen v. Owen, 928 So.2d 156, 160(¶ 10) (Miss.2006) (quoting Savelle v. Savelle, 650 So.2d 476, 479 (Miss.1995)). We will not disturb the findings of a chancellor unless the findings were manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. R.K. v. J.K., 946 So.2d 764, 772(¶ 17) (Miss.2007).
¶ 14. Assets acquired during a marriage are considered marital property and are subject to equitable division unless it can be shown that such acquisition of assets is attributable to one of the parties' separate estates before the marriage. Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss.1994). Equitable distribution does not mean equal distribution. Chamblee v. Chamblee, 637 So.2d 850, 863-64 (Miss. 1994). In making a division of marital property, the chancery court is not required to divide the property equally, but rather the chancery court considers several factors under the precedent of Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994) in formulating such an award. Ferguson directs the chancery court to consider the following guidelines, where applicable, when attempting to effect an equitable division of marital property:
1. Substantial contribution to the accumulation of the property. Factors to be *904 considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
Owen, 928 So.2d at 161(¶ 13) (quoting Ferguson, 639 So.2d at 928).
¶ 15. The chancery court addressed each Ferguson factor in its order, finding no proof regarding the value of the business or its assets, nor the potential tax consequences resulting from the company's division. The court found that BioElectroSpec is a successor corporation derived from a company, Aqua-M, Limited, which was created in Russia by Hunt and Dr. Asanov during their marriage. While Aqua-M was in existence, Hunt owned thirty-two and one-half percent of the company. Once the parties moved to the United States, BioElectroSpec was incorporated, and according to Hunt, BioElectroSpec assumed all of the assets of Aqua-M. Both Hunt and Dr. Asanov are listed as the initial incorporators and directors of BioElectroSpec. During the parties' marriage, Hunt served as the company's bookkeeper and accountant, and she asserts on appeal that she contributed her industrial engineering skills to the production of the BioElectroSpec technology until the date of their separation in 1999. Dr. Asanov provided technical and scientific contributions to the corporation. While Hunt was found to have spent more quality time on family duties, neither party was favored in the chancery court's review of direct or indirect economic contributions to BioElectroSpec.
¶ 16. Considering the testimony and evidence the chancery court had before it when making the distribution of BioElectroSpec, we cannot say that the chancery court erred in awarding Hunt twenty-five percent of the corporation. Each of the Ferguson factors were considered in making the equitable distribution of BioElectroSpec, and absent manifest or clear error, we must uphold the chancellor's decision. We cannot say the chancellor abused his discretion, and we *905 affirm the chancellor's judgment, accordingly.
¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF OKTIBBEHA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Hunt also moves this Court to sanction Dr. Asanov for his use of disrespectful language in his brief. Finding Hunt's motion is well taken, we hereby strike the offensive portions of Dr. Asanov's brief.
[2] The facts and procedural history of this case are contained in this Court's former opinion and will not be restated here except as necessary for understanding of this decision.
[3] In her brief to this Court, Hunt also seeks an injunction prohibiting Dr. Asanov from transferring the assets of BioElectroSpec into a newly formed corporation, TIRF Technologies, Inc., before adjudication of such equitable division. However, this issue was not brought in the chancery court; thus, it is not properly before this Court. Therefore, we decline to address any arguments regarding such a request.