# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00470-COA

**ALVIN LORENZO MAZIE, SR.**                                                    **APPELLANT**

**v.**

**DEONKA BOOZIER-MAZIE**                                                        **APPELLEE**

DATE OF JUDGMENT:              03/10/2023
TRIAL JUDGE:                  HON. TAMETRICE EDRICKA HODGES
COURT FROM WHICH APPEALED:     HINDS COUNTY CHANCERY COURT,
                              SECOND JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:       M. JUDITH BARNETT
                              HEATHER LYNN HALL
ATTORNEY FOR APPELLEE:         MATTHEW ALLEN BALDRIDGE
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
DISPOSITION:                  AFFIRMED - 10/01/2024
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., LAWRENCE AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     In 2021, Alvin Mazie and Deonka Mazie's divorce was finalized in the Hinds County Chancery Court.  In 2023, Deonka filed a motion to enforce the judgment and hold Alvin in contempt because she had not received all the property distribution from Alvin to which she was entitled based on  the chancellor's judgment.  The chancellor granted the motion and held Alvin in contempt.  Alvin filed a motion for a new trial that the chancellor denied.  Alvin appeals, asserting the chancellor's orders contained several mistakes regarding estimations of value, violated the Takings Clause of the United States Constitution by holding the title to his vehicle, and erroneously created a bailment with Hinds County as a

bailee for the payments Alvin was required to make. Following a thorough review of the record—and noting this appeal is from a judgment of contempt rather than the order of divorce—we affirm the chancellor's order of contempt and order denying a new trial.

## FACTUAL AND PROCEDURAL HISTORY

¶2. Alvin and Deonka Mazie were married on April 11, 2009. The couple separated on November 30, 2020, "although they both still reside[d] in the marital residence." On January 6, 2021, Deonka filed a complaint for divorce in the Hinds County Chancery Court. The chancellor at this time was the Honorable Denise Owens. On June 8, 2021, Alvin and Deonka agreed to a divorce and consented to an equitable distribution of their marital assets by the chancellor. During the marriage, Alvin and Deonka started a church and over the course of their marriage purchased approximately ten different pieces of real estate. Following a hearing, the divorce was finalized on June 28, 2021, and the chancery court divided the parties' real and personal property. The distribution order stated that Alvin was entitled to $417,884.01, and Deonka was entitled to $313,172.17. The original distribution order also stated that both Alvin and Deonka were "to execute all deeds, titles, contracts, and conveyances necessary to comply with these findings of fact."[1]

¶3. On July 8, 2021, Alvin filed a motion to alter and amend/correct that order. On the same day, Deonka also filed a motion to amend/correct the final order of divorce. On February 28, 2022, Chancellor Owens corrected a scrivener's error to clarify two of the

---

[1] The record on appeal does not contain any transcripts or filings prior to this "order and judgment" of divorce. Therefore, we do not know, and consequently will not address, the procedural history prior to the divorce.

2

divisions of real property. In addition, the chancellor denied Alvin's request to classify Deonka's Thrift Savings plan as a marital asset. Chancellor Owens announced her retirement in 2022.[2] She was succeeded by the Honorable Tametrice Hodges.

¶4. On January 20, 2023, Deonka filed motions to enforce the judgment, to set a hearing, and to hold Alvin in contempt or, in the alternative, to partition property "against" Alvin. Deonka stated that while she "received a portion of the cash and property allocated to her, she ha[d] not received all of it," including a list of the amounts she was still due. Deonka stated in her motion that Alvin still owed her approximately $153,262.86 for the marital distribution. On February 15, 2023, Alvin's counsel filed an entry of appearance in the cause. On March 3, 2023, Alvin filed a response. On the same day of his response filing, Alvin also filed an agreed order substituting his counsel.

¶5. On March 6, 2023, a hearing was held on the motion for contempt and to enforce the judgment. Both Alvin and Deonka testified at the hearing. Alvin stated that he was having difficulty selling some of the properties and that it was "difficult to communicate with" Deonka. He also testified that some of the properties had "burned." He explained that he spent some of the proceeds from the fires or sales on various things, including donations to charity and $100,000 on a new Chevrolet Corvette. Further, he testified he had transferred titles to two properties, one to his sister and one to his daughter.

---

[2] This does not seem to be included in the record before us. Finding it "helpful and appropriate" in this context, we take judicial notice of the year in which the previous chancellor retired. *Jourdan River Ests. LLC v. Favre*, 278 So. 3d 1135, 1145 (¶37) (Miss. 2019) ("The Court is authorized to take judicial notice of any information helpful and appropriate, including official public documents, records and publications." (citing *Enroth v. Mem'l Hosp. at Gulfport*, 566 So. 2d 202, 205 (Miss. 1990)).

¶6.    On March 10, 2023, Chancellor Hodges granted Deonka's motion for contempt, stating that Alvin's "default was willful." The order explained that "[a]fter valuing each item, the [c]ourt clearly awarded both the Defendant and the Plaintiff half of the majority of [property] items. . . . For the properties not awarded equally, the [c]ourt provided an explanation." To conclude, the chancellor held that Alvin had shown a "willful refusal to comply" with the order "despite his ability to pay a few months prior to the Plaintiff filing this contempt action." Further, "despite having the ability to comply, [Alvin] transferr[ed] title to a few of the properties to his family members instead of selling and providing the Plaintiff with her awarded amount, purchasing a vehicle costing $100,000, donating money to a charity, purchasing and rehabilitating additional properties, and storing money in a business account[] in an effort to mislead the [c]ourt regarding his financial position." The chancellor ordered that Alvin "post bond in the amount of $9,000 with the Chancery Court[,]" pay Deonka the monies she was still owed, *see infra* ¶8, and pay Deonka's attorney's fees "in the amount of $5,000."[3]

¶7.    On March 16, 2023, Alvin filed a motion for a new trial alleging that "prejudicial errors" were made at the contempt hearing and that "mistakes of law and fact" were contained in the order for contempt. *See* M.R.C.P. 59. On March 24, 2023, Deonka filed a motion for Alvin to be taken into custody, to have her allocated property seized, and to find Alvin in further contempt.[4] Of note, she alleged that Alvin had "squandered thousands of

---

[3] The amounts were due on different dates.

[4] Based on the record before us, it appears the chancellor did not rule on this motion.

4

dollars" on the Corvette rather than paying her what she was owed. On March 29, 2023, another hearing was held. Counsel for Alvin argued that the original order for divorce did not say who "was supposed to sell that property and then divide the money."

¶8. On March 29, 2023, the same day as the hearing, the chancellor denied Alvin's motion for a new trial and amended the original order of contempt to correct scrivener's errors. The amended order required a reduced payment of $6,500 on the bond and ordered Alvin to make a partial payment of $60,523.06 to Deonka on the day the order was entered. The court separated the remaining payment of $60,523.06 into two payments. The first payment of $30,261.54 was due on June 14, 2023, and the second payment of $30,261.54 was due on September 14, 2023. The amended order also required Alvin to "turn over title to the Chevy Corvette he purchased with funds obtained in September 2022." Continuing, the order stated, "[T]itle to the aforementioned vehicle shall be held in trust by the Court until [Alvin] has paid the remaining balance of $60,523.06 in full." On April 25, 2023, Alvin filed a notice of appeal.

## STANDARD OF REVIEW

¶9. We generally apply a "limited standard of review" in appeals from the chancery court. *McNeil v. Hester*, 753 So. 2d 1057, 1063 (¶21) (Miss. 2000) (citing *Reddell v. Reddell*, 696 So. 2d 287, 288 (Miss. 1997)). We "will not overturn a chancellor's findings of fact when supported by substantial evidence unless an erroneous legal standard [was] applied or [the chancellor was] manifestly wrong." *Grafe v. Olds*, 556 So. 2d 690, 692 (Miss. 1990), *superseded by statute on other grounds as recognized in A.H. v. K.M. (Adoption of A.M.)*,

323 So. 3d 509, 514 (¶27) (Miss. 2021). We review the instant case involving a chancellor's decision for abuse of discretion. *McNeil*, 753 So. 2d at 1063 (¶21) (citing *Church of God Pentecostal Inc. v. Freewill Pentecostal Church of God Inc.*, 716 So. 2d 200, 204 (Miss. 1998)).

**ANALYSIS**

¶10. On appeal, Alvin argues that (1) Chancellor Hodges erred in her determination of the property values at stake, (2) the order that Alvin relinquish title to his automobile violated his constitutional rights, and (3) the chancellor did not have the power to create a bailment in which Hinds County was the bailee concerning title to his car.

¶11. Alvin's first argument alleges that Chancellor Hodges made a "mistake of law, or misrepresentation, of the Judgment of Divorce . . . and the Order of the Court Regarding Motion to Amend/Clarify Final Judgment of Divorce . . . regarding the values of the property." Particularly, he notes that "there were no appraisals used to determine the value of any personal, or real, property." He also appears to assert that Chancellor Hodges "imputed her opinion for that of Judge Owens" once she took over the case. It is important to note that this appeal is from an order of contempt, **not** from the original order distributing the marital estate. Here, Alvin was found in contempt for failing to comply with the terms of the original order of distribution. Alvin never appealed from the order the previous chancellor entered concerning the distribution of the marital estate.

¶12. "In a case where the alleged contempt consisted of the failure to comply with the terms of the court order or decree, an inquiry into the merits of the order or decree will not

6

be permitted." *McPhail v. McPhail*, 357 So. 3d 602, 609 (¶38) (Miss. 2023) (citing *Ladner v. Ladner*, 206 So. 2d 620, 623 (Miss. 1968), *abrogated on other grounds by Bubac v. Boston*, 600 So. 2d 951, 954-55 (Miss. 1992)).  In *Mississippi Chancery Practice*, an oft-quoted treatise on this state's chancery court jurisprudence, it is noted:

> He who disobeys the orders of a court of general jurisdiction does so **at his peril**. It is no answer that the judgment was improvidently or erroneously granted, however erroneous or improvident it may be.

*Mississippi Chancery Practice* § 35:18 (2024-2025 ed.).  The Mississippi Supreme Court has characterized the same principle: "A party to a suit and/or his attorney should not be allowed to violate an order and collaterally attack it on appeal after they were sanctioned for the violation."  *McPhail*, 357 So. 3d at 609 (¶38) (citing *Tinnon v. Martin*, 716 So. 2d 604, 610 (Miss. 1998)).

¶13.    Our appellate courts have "consistently held that the inquiry in a contempt proceeding is limited to whether or not the order was violated, whether or not it was possible to carry out the order of the court, and if it was possible, whether or not such violation was an intentional and willful refusal to abide by the order of the court."  *Ellis v. Ellis*, 840 So. 2d 806, 811 (¶18) (Miss. Ct. App. 2003) (citing *Ladner*, 206 So. 2d at 623).  There are only two defenses to a contempt violation: "the inability to comply with the court's order . . . or that the court order was unclear."  *Id.* (citing *McCracking v. Champaigne*, 805 So. 2d 586, 589 (¶6) (Miss. Ct. App. 2001); *Davis v. Davis*, 829 So. 2d 712, 714 (¶9) (Miss. Ct. App. 2002)). In the case at bar, nothing within the record indicates that the parties were unable to comply with the order or that its provisions were unclear.  *See id.*  "The fact that such order is erroneous or

irregular or improvidently rendered does not justify a person in failing to abide by its terms." *Id.* (citing *Ladner*, 206 So. 2d at 623). As such, "there is no defense for a contempt citation that the contemnor does not agree with the previous order and considers the order of the court decree to be wrong, even though his motives in so doing are based upon pure moral sentiment." *Id.* (internal quotation mark omitted).

¶14. Alvin also argues that the chancellor's order "violated the Takings Clause of the Fifth Amendment of the United States Constitution" as well as the Fourteenth Amendment's due process clause. The order specifically required Alvin to "turn over title to the Chevy Corvette he purchased with funds obtained in September 2022" until he paid the remaining balance he owed to Deonka. Alvin received approximately $400,000 from the sale of one of their properties in September 2022. At the time he received those funds, he was under court order to provide Deonka $14,100 from property as marital distribution.[5] Instead of paying Deonka what he was ordered to pay, Alvin spent approximately $100,000 on a new Chevrolet Corvette.[6] The following exchange occurred between Alvin and the chancellor:

> THE COURT: So at that time, you got a big lump sum of money, so you actually had the money to pay her for everything the [c]ourt ordered her at that point?
>
> [ALVIN]: Yes.
>
> . . . .

---

[5] This specific property was 136 Jackson Street in Hazlehurst, Mississippi. The chancellor used the property's purchase price instead of the estimated value. In total, the property was valued at $31,550, and Alvin and Deonka were each entitled to half of that sum, totaling $14,100 each.

[6] Deonka asserted that Alvin owed her $112,768.86 for her portion of the real property's equitable distribution at this time.

| THE COURT: | [Y]ou never made any efforts to pay to give [Deonka] any monies from that [$400,000] as ordered by the [c]ourt? |
| --- | --- |
| [ALVIN]: | I didn't make any. Right. I'm sorry. |
| THE COURT: | You still didn't make any efforts to pay [Deonka] the amount ordered by the [c]ourt? |
| [ALVIN]: | Yes, ma'am. We're going to make sure we get some of this done as soon as, you know. |

¶15. Applicable here through the United States Constitution's Fourteenth Amendment, the Fifth Amendment "guarantees that private property shall not be taken for public use without just compensation." *See Gilich v. Miss. St. Highway Comm'n*, 574 So. 2d 8, 11 (Miss. 1990) (citing U.S. const. amend. V). The Mississippi Constitution "provides broader protection of private property rights[.]" *Id.* That relevant provision provides:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

Miss. Const. art. 3, § 17. Alvin claims the chancery court's order to provide the title to the Corvette violated those constitutional rights because the court's action amounted to a taking of his property. It should be noted that the court never took possession of the Corvette; rather, Alvin was required to entrust the title of the Corvette to the court.

¶16. In the case of *Gardiner v. Gardiner*, 230 Miss. 778, 93 So. 2d 638 (1957), the Mississippi Supreme Court was faced with a similar issue. *Gardiner* involved a separation of a couple wherein the wife filed a bill for "separate maintenance" after the husband had "failed and refused to provide funds for her separate support[.]" *Id.* at 783-84, 93 So. 2d at

9

640. The cause was brought before a chancery court and the husband was ordered to, amongst other things, "place in the registry of the court 100 shares of common stock . . . which he owned at the time the decree was entered, as security for the payment of the sums ordered to be paid to the [wife]." *Id.* at 785, 93 So. 2d at 640. The husband appealed and argued several issues, but notably here, he alleged the decision requiring him to provide the court his shares of "common stocks listed on the New York exchange of the value of approximately $90,000" was made in error. *Id.* at 783, 93 So. 2d at 639. The supreme court ultimately held that "[t]he chancellor had a right . . . to require the [husband] to deposit in the registry of the court specific securities, to insure the payment of all sums ordered to be paid to the [wife], . . . and if necessary[,] . . . may later order the stocks sold for the payment of the amounts due, or make such other orders as may be necessary to protect the rights of the wife." *Id.* at 786, 93 So. 2d at 641.

¶17. While that case did not involve an appeal of an order of contempt, it is nonetheless applicable here. The supreme court cloaked the *Gardiner* chancellor with the legal authority to accept into the registry of the court property from a noncompliant party as security for what the party owed until an order of the court was complied with. We find that Alvin's argument falls short because of the clear legal precedent set in *Gardiner*. The chancellor in this case was faced with the dilemma of Deonka not receiving the payments which had been ordered because of Alvin's failure to comply with that order. Alvin argued here that he lacked the ability to pay the amount owed to Deonka. Yet, the $100,000 Chevrolet Corvette had been purchased after the divorce when he was in noncompliance with the court's order

10

of distribution.

¶18. The chancellor was trying to ensure compliance with a legitimate court order and prevent any potential dissipation of an asset purchased with funds that should have been used to partially comply with that order. This is simply not a taking of property within the meaning of the state or federal constitution. This Court would also point out that the car was not taken away from Alvin but instead the title to the car. The chancellor's order clearly stated that the title would be "held in trust" by the court until the remaining balance he owed to Deonka was "paid in full." Alvin held the keys to the car—both literally and figuratively. All he had to do was what he had previously been ordered to do by a court of this state. The chancellor was well within her rights to order Alvin to do so as "[a]ll courts possess the inherent authority to control the proceedings before them including the conduct of the participants." *Macvaugh v. State*, 385 So. 3d 443, 451 (¶16) (Miss. Ct. App. 2023) (quoting *Aeroglide Corp. v. Whitehead*, 433 So. 2d 952, 953 (Miss. 1983)); *see also Wyssbrod v. Wittjen*, 798 So. 2d 352, 359-60 (¶27) (Miss. 2001) ("An act committed in disregard of a court order is a contempt of that court and is within the inherent power of the court to punish.") (citing *Purvis v. Purvis*, 657 So. 2d 794, 798 (Miss. 1994)).

¶19. Finally, Alvin argues against Hinds County's position of a "bailee" over his private property. He alleges that "[w]hen Chancellor Hodges made Alvin turn in his title to his car, she did so with the intent of depriving him of the privilege of driving and to use the Corvette as collateral." Alvin claims that "[t]here is no law that allows a Chancellor to become a bailee to a litigant, nor does she have the authority to bind Hinds County, Mississippi, to a

11

debt to a private person." Additionally, he claims that "taking a person's vehicle, or title, from them makes them a bailee and, if something happens to the vehicle, then the liability of fixing said vehicle falls on Hinds County, Mississippi."

¶20. His argument, less than one page long, ends with a citation: *State Highway Comm'n v. Mason*, 192 Miss. 576, 6 So. 2d 468, 469 (1942). Yet, Alvin does not quote or paraphrase any particular reference to the *Mason* case, nor does he make any argument as to how it applies or stands as authority to the situation in this appeal. *Mason* discusses due compensation and liability but does not involve similar circumstances to the case at bar. This Court is not in the business of speculation or making assumptions as to litigants' arguments before this Court.

¶21. Rule 28(a)(7) of the Mississippi Rules of Appellate Procedure requires an appellant's argument to "contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." This rule "does not simply require a party to **mention** authority; the authority must be used to **develop the argument in a meaningful way**." *Reading v. Reading*, 350 So. 3d 1195, 1199 (¶19) (Miss. Ct. App. 2022) (emphasis added) (quoting *Walker v. State*, 197 So. 3d 914, 919 (¶25) (Miss. Ct. App. 2016)). "[I]n the absence of meaningful argument and citation of authority, appellate courts generally will not consider the assignment of error." *Id.* at (¶22) (quoting *Patton v. State*, 109 So. 3d 66, 75 (¶22) (Miss. 2012)). Alvin's assertions are not supported by authority, nor is there any meaningful argument on this issue. The citation to one case with only general application but without

any meaningful argument is simply inadequate for this Court to consider. This issue is procedurally barred. Even if we were to consider the argument, it would be resolved according to *Gardiner* and fail, just as his Takings Clause argument fails.

## CONCLUSION

¶22. Following a complete and thorough review of the record with our limited standard of review in chancery cases in mind, we find no error and thus affirm the chancellor's order of contempt and the order denying a new trial.

¶23. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., NOT PARTICIPATING.**